*H. H. Winslow, H. J. Winslow & J. D. Hill*, for the tenant.

---

JOHN FOTTLER, JR. *vs.* CHARLES W. MOSELEY.

Suffolk.    November 20, 1903. — May 19, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Actionable Tort.    Deceit.    Damages.*

To create a liability for an unlawful act which involves a risk of injury to another, it is not necessary that the wrongdoer should contemplate the precise way in which the damage will occur or even expect that any damage will result from the act.

One, who by fraudulent representations has induced another to refrain from selling shares of a certain stock which he was about to sell, is liable for a loss to the owner of the stock from a fall in its price caused by the discovery of an embezzlement of the funds of the corporation by one of its officers, which occurs while the owner of the stock is continuing to hold it acting under the inducement of the fraudulent representations.

TORT for deceit, alleging, that, relying upon the false and fraudulent representations of the defendant, a broker, that certain sales of the stock of the Franklin Park Land Improvement Company in the Boston Stock Exchange from January 1 to March 27, 1893, were genuine transactions, the plaintiff revoked an order for the sale of certain shares of that stock held for him by the defendant, whereby the plaintiff suffered loss. Writ dated February 17, 1896.

At the first trial of the case in the Superior Court a verdict was ordered for the defendant, and the exceptions of the plaintiff were sustained by this court in a decision reported in 179 Mass. 295. At the new trial in the Superior Court before *Sherman*, J., it appeared that one Moody Merrill, a director and officer of the Franklin Park Land Improvement Company,

absconded late in May or early in June of 1893, and that imme-
diately upon his departure it was discovered that he had embez-
zled nearly $100,000 of the funds of that company, the result
of which was that the market price of the stock immediately
fell and the stock could not be sold; that the plaintiff from
the time of the discovery of the defendant's alleged fraud did
his best to sell his stock, but was unable to do so at more
than $3 a share, at which price he sold it after bringing this
action.

The plaintiff among other requests asked the judge to rule,
" That it is of no consequence so far as the defendant's liability
is concerned that an outside intervening cause has been the sole
or contributing cause of the decline in price to which the plain-
tiff's loss is due."

The judge refused this and other rulings requested by the
plaintiff, and instructed the jury, among other things, as
follows:

" If you find the fair market value of that stock was always
above what it was fictitiously quoted, or equal to it, and that it
was so on the 25th of March, 1893, and remained so and would
have remained so, except for the embezzlement and absconding
of Moody Merrill, then the plaintiff is not entitled to recover.

" If you find that Moody Merrill's going away did destroy the
value of the stock, practically destroy its value, then the plaintiff
is not entitled to recover anything.

" You may take all the evidence on this subject, the fact of
what Moody Merrill did, and what effect it had upon the market
value of this stock, and if that destroyed the market value, then,
as I have told you, the plaintiff is not entitled to recover any-
thing. If his going away and embezzlement did not affect the
market value of this stock, then the plaintiff may recover the
full value of it."

The judge submitted to the jury the following questions, which
the jury answered as stated below:

" 1. Did the defendant make a representation to the plaintiff
on or about March 25, 1893, that the quotations in the Boston
Stock Exchange of Franklin Park Land and Improvement Com-
pany stock were quotations of actual and true sales ? " The jury
answered " Yes."

" 2. Were such quotations at or about the same sum as the quotations of actual sales and the sales at public auction ? " The jury answered " Yes."

" 3. What was the fair market value of said stock on or about March 25, 1893 ? " The jury answered " $28.50 per share."

" 4. What was the fair market value of said stock on the last day of May, or immediately prior to June, 1893, the day before Moody Merrill's absconding? " The jury answered " $27.75 per share."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*R. W. Nason,* for the plaintiff.

*B. L. M. Tower,* (*E. O. Hiler* with him,) for the defendant.

KNOWLTON, C. J.   The parties and the court seem to have assumed that the evidence was such as to warrant a verdict for the plaintiff under the law stated at the previous decision in this case, reported in 179 Mass. 295, if the diminution in the selling price of the stock came from common causes.   The defendant's contention is that the embezzlement of an officer of a corporation, being an unlawful act of a third person, should be treated as a new and independent cause of the loss, not contemplated by the defendant, for which he is not liable.

To create a liability, it never is necessary that a wrongdoer should contemplate the particulars of the injury from his wrongful act, nor the precise way in which the damages will be inflicted.   He need not even expect that damage will result at all, if he does that which is unlawful and which involves a risk of injury.   An embezzler is criminally liable, notwithstanding that he expects to return the money appropriated after having used it.   If the defendant fraudulently induced the plaintiff to refrain from selling his stock when he was about to sell it, he did him a wrong, and a natural consequence of the wrong for which he was liable was the possibility of loss from diminution in the value of the stock, from any one of numerous causes.   Most, if not all, of the causes which would be likely to affect the value of the stock, would be acts of third persons, or at least conditions for which neither the plaintiff nor the defendant would be primarily responsible.   Acts of the officers, honest or dishonest, in the management of the corporation, would be among the most com-

mon causes of a change in value. The defendant, if he fraudulently induced the plaintiff to keep his stock, took the risk of all such changes. The loss to the plaintiff from the fraud is as direct and proximate, if he was induced to hold his stock until an embezzlement was discovered, as if the value had been diminished by a fire which destroyed a large part of the property of the corporation, or by the unexpected bankruptcy of a debtor who owed the corporation a large sum. Neither the plaintiff nor the defendant would be presumed to have contemplated all the particulars of the risk of diminution in value for which the defendant made himself liable by his fraudulent representations. It would be unjust to the plaintiff in such a case, and impracticable, to enter upon an inquiry as to the cause of the fall in value, if the plaintiff suffered from the fall wholly by reason of the defendant's fraud. The risk of a fall, from whatever cause, is presumed to have been contemplated by the defendant when he falsely and fraudulently induced the plaintiff to retain his stock.

We do not intimate that these circumstances, as well as others, may not properly be considered in determining whether the plaintiff was acting under the inducement of the fraudulent representations in continuing to hold the stock up to the time of the discovery of the embezzlement. The false representations may or may not have ceased to operate as an inducement as to the disposition of his stock before that time. Of course there can be no recovery, except for the direct results of the fraud. But if the case is so far established that the plaintiff, immediately upon the discovery of the embezzlement, was entitled to recover on the ground that he was then holding the stock in reliance upon the fraudulent statements, and if the great diminution in value came while he was so holding it, the fact that this diminution was brought about by the embezzlement of an officer leaves the plaintiff's right no less than if it had come from an ordinary loss.

*Exceptions sustained.*