EDWARD J. STEWART *vs.* JOHN JOYCE & others.

Suffolk.    December 1, 1908.— February 27, 1909.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Equity Jurisdiction,* Laches, To rescind sale induced by fraud, Damages. *Equity Pleading and Practice,* Master's report. *Deceit. Sale,* Rescission for fraud *Bona fide* purchaser. *Corporation,* Duty of directors. *Words,* "Quick assets."

Where in a suit in equity the defense of laches is not set up by demurrer nor by a plea nor answer, yet, if it clearly appears by the evidence that the plaintiff with knowledge of the facts failed to assert his claim for such an unreasonable length of time that it would be inequitable for the court to aid him, the court in its discretion may deny him relief on this ground, but, where a defendant has failed to demur and in his answer has not set up the defense of laches and does not raise this issue at the hearings before a master to whom the case is referred, it is too late after the filing of the master's report for him to ask as a matter of right that the bill shall be dismissed on this ground.

Where a suit in equity is referred to a master by an order which does not require him to report the evidence, and he makes a report without doing so, his findings of fact must be treated as final.

In a suit in equity to rescind a sale of shares of the capital stock of a certain corporation made by the plaintiff to the defendants and alleged to have been induced by false and fraudulent representations of the defendants, it appeared that one of the defendants was the treasurer and a director of the corporation and that the other defendants were directors of the corporation and by reason of their controlling interest were known as "insiders," and that these defend-

ants were seeking to buy at as low a price as possible outstanding stock held in small amounts by a number of stockholders, including the plaintiff, that the defendant treasurer stated to the plaintiff that he was trying to buy some of the stock of the company, including the plaintiff's stock, so that he would be enabled to retain his position with the company, that he had a friend, not one of the defendants, who was willing to back him, that he "had not paid over eighty cents a share, and had bought as low as forty cents," that the plaintiff previously had told the defendant treasurer that he would sell to him but not to "insiders," and that the defendant treasurer was buying for the purpose of selling or transferring the stock to "insiders." *Held,* that the representation of the defendant treasurer that he intended to buy the shares for himself not only was false but was material.

In a suit in equity to rescind a sale as induced by false and fraudulent representations of the defendant, misrepresentations made by the defendant in regard to a material matter are not sufficient ground for granting relief unless the plaintiff shows that he was misled by the deceit.

A master in a suit in equity in passing upon the question of the solvency of a corporation and finding that its debts at a certain time did not exceed its "quick assets," may include in the quick assets the balance of a loan due to the corporation from an individual, if the individual is not shown to have been insolvent or to have refused to make further payments.

In a suit in equity to rescind a sale of shares of the capital stock of a certain corporation made by the plaintiff to the defendants and alleged to have been induced by false and fraudulent representations of the defendants, it appeared that one of the defendants was the treasurer and a director of the corporation and that the other defendants were directors of the corporation and by reason of their controlling interest were known as "insiders," that the defendant treasurer had sent to the plaintiff as a stockholder a statement purporting to set forth the corporation's actual financial condition, and then had induced the plaintiff to sell him the shares in question, that there had been an improvement in the corporation's outlook caused by larger sales of its product and increased efficiency of the machinery, that this change for the better was known to the defendant treasurer but not to the plaintiff, to whom he did not disclose it, that the price paid to the plaintiff by the defendant treasurer was less than the fair market value of the shares, and that the defendant treasurer bought the shares for the purpose of selling them to "insiders," which he immediately did and received the profit. It also appeared that the defendant treasurer knew of the plaintiff's ignorance of the falsehood in the statement and of his ignorance of the actual state of affairs and his reliance on the false statement. *Held,* that a finding was justified of all the essential elements of deceit on the part of the defendant treasurer which would entitle the plaintiff to damages at law or to a decree in equity for a rescission against him, and that, although a rescission with a restitution of the stock could not be decreed against the defendant treasurer, because he had parted with the shares, the bill should be retained for the assessment of damages against him.

In a suit in equity to rescind a sale of shares of the capital stock of a certain corporation made by the plaintiff to the defendants and alleged to have been induced by false and fraudulent representations of the defendants, it appeared that one of the defendants was the treasurer and a director of the corporation and that the other defendants were directors of the corporation and by reason of their controlling interest were known as "insiders," and that these defendants were seeking to buy at as low a price as possible outstanding stock held in

small amounts by a number of stockholders, including the plaintiff, that the defendant treasurer made false statements to the plaintiff in regard to the affairs of the corporation, knowing them to be false and intending the plaintiff to rely on them, that the plaintiff, relying on these representations, sold his shares to the defendant treasurer for a price less than their fair market value, and that the defendant treasurer thereupon sold the shares at an advance to the "insiders" who were the other defendants, that a letter to the stockholders, which was drawn by the defendant treasurer and contained a part of the false statements relied on by the plaintiff, was approved by the board of directors at a meeting when the other defendants were present as directors, but that there was no attempt to deceive or misrepresent on the part of these other defendants, the only motive which actuated them being "a perfunctory desire to discharge a duty to stockholders," that the letter to the stockholders approved by the board was not sent by these other directors for the purpose of influencing the plaintiff to sell his stock or for the general purpose of influencing the market, and that the misstatements and omissions in the letter were attributable, on their part, "not to bad faith, but to indifference and incompetence." *Held,* that a finding of a master that the defendants other than the treasurer acted honestly could not be said to be plainly wrong, and that upon the master's findings those defendants, having purchased the plaintiff's shares from the defendant treasurer without notice of his fraud, were innocent purchasers for value against whom the bill could not be maintained.

BILL IN EQUITY, filed in the Supreme Judicial Court on January 18, 1906, and amended by the filing of a substituted bill on July 18, 1906, to rescind a sale of shares of the capital stock of the Gillette Safety Razor Company, a corporation organized under the laws of the State of Maine, made by the plaintiff to the defendant Heilborn, alleged to have been acting for himself and the other defendants, on or about August 1, 1904, at $1 a share, when the fair value was alleged to have been $10 a share, such sale being alleged to have been induced by false and fraudulent representations made to the plaintiff by the defendants.

The case was referred to Eliot N. Jones, Esquire, as special master. The findings contained in his report are described in the opinion.

The defendants filed the following exceptions to the master's report:

1. In the above entitled case each defendant severally objects and excepts to the ruling of the master that the representation in substance that Heilborn was intending to buy for himself was a material representation.

2. Each defendant severally objects and excepts to the construction by the master of the term "quick assets" appearing in the letter of June 23, 1904, and requests the master to rule that

the balance remaining to be advanced under the contract with Joyce on June 23, 1904, upon the facts set out in the report, was not a quick asset within the natural meaning of the words " quick assets " as used in the letter of June 23, 1904.

The plaintiff filed the following exceptions to the master's report:

1. That the master found that it is not shown that the comparatively good results of the business in May, 1904, could, on the 1st of June, reasonably be expected to endure, whereas he should have found, from the other findings of fact bearing upon this matter, that those results should, at that date, reasonably have been expected to endure.

2. That the master found that the statement in the June 23 letter, to wit, " it is necessary to provide a substantial sum of money in order that all this may be done and the company placed upon a satisfactory financial footing," so far as it is one of opinion, is not shown to be such as might not reasonably have been held by the directors on June 22 and 23, and that he cannot find that such was not the opinion actually held by Holloway, Joyce and Heilborn, whereas he should have found and concluded to the contrary, in view of his other findings of fact bearing upon these questions.

3. That the master ruled that Heilborn's representations to Stewart that he (Heilborn) had not paid over eighty cents a share for stock and had bought as low as forty cents (which representation the master found to have been false) was not material, whereas he should have ruled that it was material.

4. That the master found that Heilborn's stock purchases had nothing to do with his official capacity, and that in regard to his representations, quoted in the last exception, he stood in the position of an ordinary purchaser, whereas he should have found and ruled to the contrary in both particulars.

5. That the master found " as a matter of fact " that Heilborn had no authority from any of the defendants to make representations, whereas he should have ruled, first, that this was a matter of law, or, second, a mixed question of law and fact, and, third, as a matter of law should have ruled from the other facts found by him that the defendants (except Gillette) were bound by Heilborn's representations to Stewart because of his

agency, and, fourth, should have found as a matter of fact that Heilborn was authorized, directly or impliedly, to make the representations.

6. That the master found that it is not proved that there was any conspiracy or plan among the defendants, or any of them, on or before July 8, 1904, to obtain the plaintiff's stock by fraud, or any conspiracy or plan in pursuance of which the June 23 letter was sent, or in pursuance of which Heilborn made representations to Stewart, or obtained the option from him, whereas he should have found to the contrary in all these particulars in view of his other findings of fact bearing thereon.

7. That the master found that on June 17 the defendants Holloway, Joyce and Heilborn were genuinely disturbed at the immediate conditions of the business, whereas he should have found to the contrary, in view of his other findings of fact bearing upon this question.

8. That the master found that the misstatement and omissions in the letter of June 23 are attributable not to bad faith, but to indifference and incompetence, whereas he should have found that they were attributable to bad faith as well as indifference and incompetence, in view of the law relative to directors and of his other findings of fact bearing thereon.

9. That the master found that there was no intent to deceive in sending the June 23 letter and that the motive of Holloway, Joyce and Heilborn in sending it was a perfunctory desire to discharge a duty to stockholders, and that it was not sent for the purpose of influencing Stewart to sell his stock or for the general purpose of influencing the price of stock, whereas he should have found, as a matter of fact, an intent to deceive the stockholders and influence the sale of stock, and should have ruled, as a matter of law, that the letter, under the findings of fact made by him, was a fraud upon the plaintiff and the other stockholders, and legally, as well as in fact, a deception by the directors.

10. That the master found that Stewart did not rely upon the oral misrepresentations of Heilborn, whereas he should have found that he did rely on them, at least in part, and that they were material inducements toward making the sale.

11. That the master found that in bargaining for and in taking Stewart's option Heilborn was not acting as agent for any

other defendant, whereas he should have found, as a matter of fact, and should have ruled, as a matter of law, that Heilborn was the agent for Joyce and Holloway in this matter.

12. That the master ruled that Heilborn bought of Stewart on his own account and not as agent for any other defendant, whereas he should have ruled, from the facts found by him, that Heilborn bought as agent for Joyce and Holloway.

13. That the master failed to rule whether or not on the facts found by him the plaintiff was entitled to relief, whereas he should have ruled that the plaintiff was entitled to the relief prayed for in his bill.

14. That the master failed to rule that the plaintiff's rights were not barred by laches, and failed to find that no laches existed, whereas he should have found and ruled that no laches existed and that it was not a bar.

15. That the master found that the value of the plaintiff's stock at the time of his sale was $1.50 per share, whereas he should have found that it was a much higher amount.

16. That the master refused, at the plaintiff's request, to report the evidence or the facts relative to the sales made from April to September, 1904, by twelve other stockholders to Heilborn (who at once transferred all this stock to Joyce and Holloway and purchased in each case with their money and by a previous arrangement with them under circumstances similar to the sale of the plaintiff), whereas he should have reported the evidence or facts, and his conclusions therefrom, as to the truth or falsity of the representations made by Heilborn to induce these sales.

17. That the master refused, at the plaintiff's request, to report the record of the meeting of the directors on March 18, 1904, whereas he should have included this record in his report, inasmuch as it contained important evidence bearing upon the questions at issue.

18. That the master refused, at the plaintiff's request, to add a finding as to the value of the stock at the time of the filing of this bill, whereas he should have found and reported that value, if he also included a finding as to its value at the time of the sale in question.

19. That the master refused to rule, as requested by the plain-

tiff, that laches was not open to the defendants as a defense under the pleadings and admitted evidence bearing thereon, whereas he should have excluded such evidence and should have ruled that it was not admissible under the pleadings.

20. That the master refused, at the plaintiff's request, to report the evidence or facts that Belcher and Sachs each warned Heilborn, previous to the June 23 letter, that the sending of such a letter would have the effect of alarming the stockholders and depreciating the value of their stock, whereas he should have included the evidence or facts as a part of his report.

21. That the master refused, though requested by the plaintiff, to report the evidence or facts showing the failure and neglect of Heilborn to inform Sachs, upon the request of the latter, as to the output of the business during the spring and summer of 1904.

After certain other proceedings, not now material, the case came on to be heard before *Loring*, J., who reserved it upon the pleadings, the master's report and the exceptions thereto for determination by the full court, such decree to be entered therein as equity and justice required.

*H. T. Richardson & H. M. Williams*, for the plaintiff.

*B. B. Jones*, for the defendants Joyce and Curran.

*E. F. McClennen*, for the defendants Gillette, Holloway and Heilborn.

BRALEY, J. In equity the defense of laches may be raised by demurrer if upon its face the bill shows the demand is stale, and no sufficient reasons for the delay are stated specifically, or it may be pleaded, or set up in the answer. If raised by the pleadings, the plaintiff being informed of the defense may have the opportunity to amend by showing if he can that his delay was excusable. *Sawyer* v. *Cook*, 188 Mass. 163, 168, and cases cited. *Sunter* v. *Sunter*, 190 Mass. 449. But, even if it is not thus raised, the court at the trial in its discretion may deny relief, where upon the evidence it clearly appears that with knowledge of the facts the plaintiff's failure to assert his claim has continued for such an unreasonable time that it would be inequitable for the court to aid him. *Phillips* v. *Rogers*, 12 Met. 405, 411. *Snow* v. *Boston Blank Book Manuf. Co.* 153 Mass. 456. *Sawyer* v. *Cook*, 188 Mass. 163, 168. *Sullivan* v.

*Portland & Kennebec Railroad,* 94 U. S. 806. *Williard* v. *Wood,* 164 U. S. 502, 504.

The defendants failed either to demur, or to raise this issue in their answer, and it was not before the master to whom the case was referred. After his report was filed it was too late for the defendants as a matter of right to ask the court of its own motion to dismiss the bill. *Pingree* v. *Coffin,* 12 Gray, 288, 323.

But, even if this defense were open, upon the facts reported by the master it cannot be said that the plaintiff has unreasonably delayed the prosecution of his suit. *Hill* v. *Mayor of Boston,* 193 Mass. 569, 574.

The order not having required a report of the evidence the master's findings of fact must be treated as final, and, it having been conceded that the defendant Gillette cannot be held, the only question is, whether upon the report the plaintiff is entitled to a decree against the remaining defendants, or either of them. *East Tennessee Land Co.* v. *Leeson,* 183 Mass. 37.

The plaintiff was the owner of four thousand one hundred and seventy-seven shares of the capital stock of the Gillette Safety Razor Company, and alleges that, through the fraud and misrepresentations of the defendants, he was induced to sell to them all but five hundred shares at a price much below their value. During the period covered by the transactions all of the remaining defendants with the exception of Curran were directors of the corporation, while Heilborn also was its treasurer. The alleged misrepresentations consisted of oral statements made by Heilborn, who alone dealt directly with the plaintiff, and a letter with an estimated statement of assets and liabilities sent by Heilborn as treasurer to the stockholders pursuant to a vote of the directors, in which the financial condition of the company is found to have been set forth erroneously. The master specifically finds that of the oral representations alleged in the bill the plaintiff failed to prove any except " that Heilborn was endeavoring to purchase some of the stock of the company including the plaintiff's stock so that he would be enabled to retain his position with the company, and had a friend, not one of the defendants, willing to back him," and " that Heilborn had not paid over eighty cents a share, and had bought as low as forty cents."

The full import of this finding appears when considered in connection with the other findings, that the defendants, who by reason of their controlling interest were known as " insiders," were seeking to buy at as low a price as possible outstanding stock held in small amounts by a number of stockholders including the plaintiff, and that the plaintiff previously had told Heilborn that he would sell to him, but would not sell to " insiders." It having been found further that at the time Heilborn was buying for the purpose of selling or transferring the stock to " insiders," this representation not only was false, but properly was held to be material, and the defendants' first exception must be overruled.

The misrepresentations as to the selling price of the stock also were actionable. *Kilgore* v. *Bruce*, 166 Mass. 136, 138 ; *Gurney* v. *Tenney*, 197 Mass. 457. But, as the master further found that in selling the plaintiff did not rely upon these misrepresentations, the plaintiff has not shown that he has been misled by the deceit. *Matthews* v. *Bliss*, 22 Pick. 48, 53. *Lee* v. *Tarplin*, 183 Mass. 52.

At the time of the negotiations the plaintiff is found to have relied upon the letter or statement sent out by the directors on June 23, 1904, and to have believed its contents as to the company's financial standing. A large part of the report is devoted to the truth or falsity of the statements contained in this letter. The master's conclusion, based on evidence not before us, is that the debts did not exceed the quick assets, and that the company, although somewhat in the experimental stage as to a successful development of the patent, was solvent. In making this finding he includes in the " quick assets " the balance of a loan due from the defendant Joyce to the company. But, as Joyce is not shown either to have been insolvent, or to have refused to make further advancements, the defendants' second exception is not tenable. *Poland* v. *Beal*, 192 Mass. 559, 564.

Heilborn, however, not only knew of the contents of this statement, but had prepared it. We have then this situation. This defendant, who was the treasurer and a director, had sent to the plaintiff as a stockholder a statement purporting to set forth the company's actual financial condition. If this exhibit was taken at its face value, the future success of the company

was very doubtful. Having gone thus far, he approaches the plaintiff for the purpose of buying his stock. At the date of the sale, July 8, 1904, or when the option to buy was given, which resulted in a transfer of the shares shortly after, there had been moreover an improvement in the company's outlook caused by larger sales and increased efficiency of the machinery by the use of small grinders which were working successfully. This substantial change for the better was known to Heilborn, but not to the plaintiff, to whom he did not disclose the fact nor even intimate that any improvement had taken place. The plaintiff, as the master finds, believing and relying upon the representations contained in the statement and acting in complete ignorance of the existing state of affairs, was induced to sell his stock at much less than its fair market value. At the time of the purchase the defendant Heilborn was buying for the purpose of selling to "insiders" at an advance, which he immediately did, and received the profit. The subsequent finding to which in connection with the liability of the other defendants we shall refer later, that there was no intent to deceive when the statement was sent out, does not relieve this defendant from the consequences of his fraudulent conduct, when he came to deal directly with the plaintiff. The statement was false and he knew it. He also knew not only of the plaintiff's ignorance of the falsehood but of his ignorance of the actual state of affairs and of his reliance on the statement. No further proof of Heilborn's intention that the representations should be acted upon was necessary. *Collins* v. *Denison*, 12 Met. 549. *Cole* v. *Cassidy*, 138 Mass. 437. *Weeks* v. *Currier*, 172 Mass. 53, 55, and cases cited. *Pontifex* v. *Bignold*, 3 M. & G. 63. *Fisher* v. *Budlong*, 10 R. I. 525. All the essential elements of actionable deceit, whether at law for damages, or in equity for rescission, are found to have been present in a deliberate misrepresentation by the buyer of facts peculiarly within his knowledge upon which the seller relied and had the right to rely when made by the treasurer of the company, and by which he was deceived and induced to sell to him his stock for less than its market value. *King* v. *Eagle Mills*, 10 Allen, 548, 551. *Long* v. *Athol*, 196 Mass. 497, 503, 504, and cases cited. *Tyron* v. *Whitmarsh*, 1 Met. 1, 6. *Lobdell* v. *Baker*, 1 Met. 193, 201. *Fottler* v.

*Moseley,* 185 Mass. 563.    *Elliott* v. *Baker,* 194 Mass. 518, 523.
*Kountse* v. *Kennedy,* 147 N. Y. 124, 130.    *Rese River Silver
Mining Co.* v. *Smith,* 4 H. L. Cas. 64, 80.    *Walsham* v. *Stainton,*
1 DeG., J. & S. 527.    *Stewart* v. *Wyoming Cattle Ranche Co.*
128 U. S. 383.

If Heilborn has parted with the shares, and rescission cannot
be decreed with a restitution of the stock, as the master finds,
yet the bill as to him can be retained for the award of money
damages, which may be assessed before a single justice.    *Lexing-
ton Print Works* v. *Canton,* 171 Mass. 414.    *White* v. *Dame,* 176
Mass. 542.

Under the master's findings, that Heilborn bought on his
own account, and that although the defendants Joyce and Hol-
loway knew of the proposed purchase and advanced the money
and took by transfer from him the shares in certain proportions
in their names and in the name of the defendant Curran, a
brother in law of Joyce for whom he acted, yet the defendants
did not constitute him their agent or clothe him with any au-
thority to make any statements in their behalf and that there
was no agreement between them to obtain the plaintiff's stock,
the allegations of agency and of conspiracy are not proved.    The
plaintiff as to these defendants is consequently compelled to rely
solely upon the statement to the stockholders.    In this statement
the defendant Curran did not participate.    The defendants Joyce
and Holloway, however, were directors present at the meeting,
and the report states that "the letter or statement as drawn by
Heilborn was approved by the board."    But, notwithstanding
this action of the directors and the material misstatements which
the letter to the stockholders is found to have contained, the
master finds that there was no intent to deceive or misrepresent
and that the only motive which actuated the directors "was a
perfunctory desire to discharge a duty to stockholders," and
"that it was not sent for the purpose of influencing" the
plaintiff "to sell his stock, or for the general purpose of in-
fluencing the price of stock," although upon other findings it
is plain they were seeking to purchase from the small stock-
holders at the lowest possible price.    He further finds that the
misstatements and omissions "are attributable not to bad faith,
but to indifference and incompetence."

If the representations had been found to have been fraudulently made, the present case would fall within *Fottler* v. *Moseley*, 185 Mass. 563, 565, where it is held that liability follows even if the wrongdoer does not contemplate "the particulars of the injury from his wrongful act nor the precise way in which damages will be inflicted." But, if the directors of a corporation are chargeable with knowledge of its affairs, where they falsely represent its condition to induce individuals to take stock or to induce their own stockholders to sell to them, when viewed with the master's general findings as to their belief in the uncertain outcome of the company at the time, and its prospect of ultimate success, we cannot say that the master's general conclusions, that they acted honestly, even if they might have been negligent or committed errors of judgment, are unsupported by the facts before him or are plainly wrong. The result is, that these defendants, not having made any contract with the plaintiff, nor having entered into any scheme to defraud him or falsely mislead him to his damage, cannot be held liable, and, having bought without notice of Heilborn's fraud, they are innocent purchasers for value against whom the bill cannot be maintained. 1 Story Eq. Jur. (13th ed.) 409.

The various exceptions of the plaintiff must be overruled, the report confirmed, and the bill dismissed as to all the defendants except Heilborn.

*Decree accordingly.*