LUCIEN H. DAVID *vs.* MORGAN BELMONT & others.

Suffolk.     April 3, 1935. — July 5, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, LUMMUS, & QUA, JJ.

*Damages*, For tort.   *Deceit.*

In an action of deceit for false representations inducing the plaintiff not to sell certain shares of stock and to buy more of the same kind, damages were to be assessed with respect to the shares retained at the difference between their market value at the time of the false representations and their market value at the time of the plaintiff's discovery of the fraud, and with respect to the shares purchased at the difference between the price paid for them and their market value at a time when he repudiated the purchase and tendered them to the defendant.

TORT.   Writ dated December 26, 1930.

The action was tried in the Superior Court before *F. T. Hammond*, J.  There were verdicts for the plaintiff on both counts of the declaration aggregating $13,492.39.  The defendants alleged exceptions.

*C. P. Curtis, Jr.*, for the defendants.

*G. E. Mears*, (*F. G. Moulton* with him,) for the plaintiff.

CROSBY, J.  This is an action at law in which the plaintiff seeks to recover damages alleged to have been sustained by reason of his purchase of three hundred shares of the common stock of the Cooper-Bessemer Corporation from the defendants, who were partners engaged in the business of banking and dealing in securities, with an office in Boston.

The declaration is in two counts.  The first relates to one hundred shares of stock purchased on September 24, 1929, which, it was alleged, the plaintiff was induced to continue to hold, when he otherwise would have sold, by reason of certain false and fraudulent representations made to him by the defendants in May, 1930.  The second count relates to two hundred shares, which, it is alleged, the plaintiff was induced to purchase, at the same time in May, 1930, when

he was induced to hold the one hundred shares, by the same false and fraudulent representations.

There was evidence at the trial that the plaintiff purchased of the defendants one hundred shares of the common stock of the Cooper-Bessemer Corporation on September 24, 1929, at $56.50 a share, and two hundred more on May 29, 1930, at $54.75 a share; that certain advertisements regarding this stock were published by the defendants in the Boston Herald on May 12, May 19, and May 26, 1930; that the defendants' manager on or about May 21, 1930, made certain other representations to the plaintiff; that late in November or early in December, 1930, the plaintiff discovered that some or all of these representations were false; that on December 22, 1930, the plaintiff repudiated his purchase of the two hundred shares and tendered them, together with all dividends received thereon, to the defendants; that the market price of the shares at the time the representations were made was between $52.125 and $57 per share; that when the plaintiff discovered the falsity of the representations the price was between $20.50 and $23 per share; that when the plaintiff repudiated his purchase of two hundred shares and tendered them to the defendants the price was between $18.25 and $19 per share. It appeared that the common stock of the Cooper-Bessemer Corporation was regularly and actively traded in on the New York Curb from September, 1929, down to and including December 22, 1930. The market price of the shares, as hereinbefore set out, represented the range of prices at which the stock sold on the New York Curb during the periods and on the dates as hereinbefore referred to, and it was not disputed that the market prices represented the market value of the shares. There was no evidence in the case, and none was offered either by the plaintiff or by the defendants, as to the actual value of the shares of stock of the Cooper-Bessemer Corporation as distinguished from their market value. There was no other evidence of the value of the stock.

The jury in answer to special questions submitted to them found that the representations made by the defend-

ants with respect to this stock were not true. The defendants made among others the following requests for rulings: "16. If the plaintiff is entitled to recover under Count 1 of his declaration, his damages are limited to the difference between the actual value of his stock at the time of the alleged misrepresentations which induced him to hold it and the value said stock would have had if the representations had been true. 17. If the plaintiff is entitled to recover under Count 2 of his declaration, his recovery is limited to the difference between the price paid for the stock and the actual value of the stock at the time of tender." These requests were refused, and the defendants excepted. The case was submitted to the jury for a general verdict.

The judge charged with respect to damages under the first count, in substance, that if the untrue statements were made with intent that the plaintiff should act upon them by refraining from selling his stock and he did so act, he would be entitled to damages measured by the difference between the market value of the stock at the time the statements were made and the market value when he discovered that they were untrue; and with respect to damages under the second count, that if the untrue statements were made with intent that the plaintiff should rely on them in purchasing stock and he did so act, and within a reasonable time after discovering the statements were untrue he tendered back the stock, the plaintiff would be entitled to damages measured by the difference between the price paid for the two hundred shares when they were bought and the market value of those shares at the time he repudiated the sale, which was about December 22, 1930. The defendants excepted to the charge as given on the issue of damages. The jury returned verdicts for the plaintiff on both counts.

The defendants' exceptions relating to the first count are on the basis that the judge erred in ruling that damages recoverable were to be measured by the difference between the market value of the stock at the time the statements were made which induced the plaintiff not to sell, and the market value at the time he discovered that they were untrue, instead of ruling as requested by the defendants

that the damages should be measured by the difference between the actual value of the stock at the time the statements were made and the value which the stock would have had if these statements had been true. Reliance to support this contention is placed on cases holding that the measure of damages when purchases have been induced by false representations is "the difference between the actual value of the property at the time of the purchase, and its value if the property had been what it was represented or warranted to be." *Morse* v. *Hutchins*, 102 Mass. 439, 440. *McNulty* v. *Whitney*, 273 Mass. 494, 504, 505. *Piper* v. *Childs*, 290 Mass. 560, 561–562. But this rule of damages is not applicable to the first count and was properly refused. Where a plaintiff suffers pecuniary injury by the fraud of a defendant, the damages recoverable are those which naturally flow from the fraud. *Tuckwell* v. *Lambert*, 5 Cush. 23. The damages sought to be recovered by this plaintiff under the first count were those sustained because he was fraudulently induced to refrain from taking action. *Bowen* v. *Carter*, 124 Mass. 426, 430. Referring to a similar situation in *Fottler* v. *Moseley*, 185 Mass. 563, 565, 566 (*S. C.* 179 Mass. 295) it was said: "If the defendant fraudulently induced the plaintiff to refrain from selling his stock when he was about to sell it, he did him a wrong, and a natural consequence of the wrong for which he was liable was the possibility of loss from diminution in the value of the stock, from any one of numerous causes. Most, if not all, of the causes which would be likely to affect the value of the stock, would be acts of third persons, or at least conditions for which neither the plaintiff nor the defendant would be primarily responsible . . . . The defendant, if he fraudulently induced the plaintiff to keep his stock, took the risk of all such changes [in value] . . . . The risk of a fall, from whatever cause, is presumed to have been contemplated by the defendant when he falsely and fraudulently induced the plaintiff to retain his stock." In such cases, as in other cases of tort, the rule of damages is one to compensate the party for the loss suffered by the wrong which has been done. *G. E. Lothrop Theatres Co.* v. *Edison Electric*

*Illuminating Co. of Boston,* 290 Mass. 189, 194. The charge as given was framed to accomplish this purpose in accordance with the evidence presented relating to the market value of the stock at the time the false statements were made and the plaintiff would otherwise have sold his stock, and the market value at the time he discovered that the representations were untrue. The loss which the plaintiff suffered was manifestly the difference between these values. See *Fottler* v. *Moseley,* 185 Mass. 563. "When they [corporate stocks] are bought and sold regularly on the stock exchange, a market value is constantly established, by resort to which their precise value at any time may be ascertained with accuracy." *Hall* v. *Paine,* 224 Mass. 62, 69.

Under the second count the defendants contended that the judge erred in ruling that the damages recoverable were to be measured by the difference between the price which the plaintiff paid for the shares he purchased and their market value at the time of his repudiation of the purchase and tender of the shares, instead of ruling, as requested by the defendants, that the damages should be measured by the difference between the price paid for the shares and their actual value at the time of the repudiation of purchase and their tender. The plaintiff in purchasing these securities was relying entirely on the representations which had been made to him. He apparently was not a potential buyer. This seems clear from the fact that he intended to sell the stock which he already held, but owing to the representations made, he not only retained that stock but purchased more. So far as the losses which he suffered by reliance on these representations are concerned, he was in effect in the same position in both cases. Presumably he continued to hold the stock after the purchase in reliance on the representations. The fraud was therefore continuing in its effect until such time as the plaintiff discovered the falsity of the representations. Any loss which he suffered would manifestly be the difference between the then value of the stock and the price which he paid for it. *Hotaling* v. *A. B. Leach & Co. Inc.* 247 N. Y. 84; 57 Am. L. R. 1142. See *Fottler* v. *Moseley,* 185 Mass. 563.

The plaintiff repudiated the transaction and tendered back the stock when he discovered the fraud. The market value was properly resorted to in establishing the value of the stock which the plaintiff held at that time. See *Hall* v. *Paine*, 224 Mass. 62, 69. "The value of a thing at any particular time, so far as it is important in determining the amount of compensation, is based upon such of its qualities as are generally known or knowable, and therefore enter into the estimation in which it is held by people generally: 'the opinion of the public of possible buyers.'" 1 Sedgwick, Damages (9th ed.) § 243, quoting Holmes, J., in *National Bank of Commerce* v. *New Bedford*, 155 Mass. 313, 315. See also *Murray* v. *Stanton*, 99 Mass. 345, 348, 349. Just what factors might have affected the market value of these shares in the present case does not alter or change the position of the plaintiff in his right to be compensated. That market value represented at the time of the tender the value of these shares to the plaintiff for purposes of such compensation. "As a rule, the fair cash value of shares having a market is best ascertained by finding the price at which they sell in the market." *National Bank of Commerce* v. *New Bedford*, 155 Mass. 313, 315. There is nothing to the contrary decided in *McNulty* v. *Whitney*, 273 Mass. 494.

As the instructions of the trial judge fail to show any error the entry will be

*Exceptions overruled.*