DONALD L. SAUNDERS *vs.* ALBERT J. GOODMAN.

Suffolk. May 17, 1979. – November 6, 1979.

Present: GOODMAN, PERRETTA, & KASS, JJ.

*Deceit. Fraud. Proximate Cause.*

In an action for deceit arising out of the negotiation of a sales agent contract between the plaintiff, a real estate property manager and broker, and the defendant, a real estate developer, for the sale of condominium units to be built on the defendant's property, there was sufficient evidence to warrant findings that the defendant falsely represented that all zoning and building permits were in order, that the plaintiff relied on the representation in entering in-

---

to the contract, and that the plaintiff was, therefore, entitled to recover his "out of pocket" losses. [613-617]

TORT. Writ in the Superior Court dated October 18, 1973.

The action was heard by *Fine,* J.

*Arthur M. Gilman* (*William F. York* with him) for the defendant.

*Jerome P. Facher* (*Joan A. Lukey* with him) for the plaintiff.

GOODMAN, J. The defendant appeals from a judgment in an action for deceit arising out of the negotiation of a "Sales Agent Contract" between the plaintiff (Saunders), a real estate property manager and broker in the metropolitan Boston area, and the defendant (Goodman), a real estate developer. The case was tried before a judge without jury; she filed "Findings of Fact, Conclusions of Law and Order for Judgment" and entered a judgment in Saunders' favor. We set out the background facts primarily from the judge's careful findings, supplemented by evidence not in issue taken from the exhibits and transcript, which are before us.

In May, 1971, Goodman entered into a joint venture with the owner of an eighteen-acre tract of unimproved land in Newton; the tract was conveyed to a trust controlled by Goodman and one DiCarlo for the purpose of developing a project of luxury condominiums. Between September, 1972, and November, 1972, Saunders and Goodman negotiated a sales agent contract which Saunders and the trust entered into on November 14, 1972. Under that contract Saunders was granted an exclusive sales agency for the condominium units. The trust became obligated to construct a model sales building containing three sample units and a sales office; Saunders obligated himself to expend at least $100,000 for advertising and promotion and to employ a sales staff and furnish and equip a sales office in the model

building, that amount to be expended before the expiration of six months from the completion of the model building. The contract specified the rate of commissions but provided that Saunders would not be entitled to any commissions if he did not sell twenty-five percent of the condominium units by the end of the six-month period.

The model building was completed on June 3, 1973,[1] and Saunders undertook an extensive selling campaign. There was substantial interest in the condominium units on the part of the public in June, July, and August, 1973; and some of the units were sold in those months. On September 4, 1973, the building commissioner of Newton issued a "cease and desist order" (so termed by the parties and the judge), requiring the cessation of "all activities related to Board Order #305-66 and Permit #1618." The cease and desist order is set out in the margin.[2] Board Order #305-66 had been issued on June 6, 1966, and had granted a petition by the owner of the tract "for permissive use . . . and approval of construction of two multiple dwelling buildings . . . and buildings for accessory purposes . . . ." The order contained a number of conditions and was accompanied by a plan. It further provided: "All uses herein permitted which shall not have been exercised within five (5) years of the granting of such permission, shall expire at the

---

[1] The six-month period thus expired on December 3, 1973.

[2] The cease and desist order provides: "An investigation has been made by the Public Buildings Department into the facts and the City Solicitor's office into the law relative to whether the developer has exercised all the uses granted by the Board of Aldermen in Board Order #305-66.

"The results of this investigation reveal that Chestnut Hill Towers, Inc., has not exercised all the uses granted in Said Order. Therefore, the permissive use, and all rights granted therein, have expired. Consequently, in accordance with Section 25-31 of the Newton Zoning Ordinance, upon receipt of this notice you will cease and desist all activities related to Board Order #305-66 and Permit #1618.

"I trust you will comply with this notice so that further action will not be necessary."

end of such 5 year period." Permit #1618 authorized laying a "Foundation Only"; it had been issued on June 27, 1966, and renewed on June 27, 1967. About a month following the cease and desist order Saunders was notified that his sales agency was terminated, and he discontinued operations without having sold twenty-five percent of the condominium units (see fn. 1 and accompanying text).

This action for deceit followed. The judge found that during the negotiation of the sales agent contract, Goodman falsely represented that all zoning and building permits were in order and that he had obtained a firm commitment from a Philadelphia bank for a $30,000,000 loan to finance the project. She entered judgment in the amount of $129,743.22, representing Saunders' "out-of-pocket" loss, viz. (as listed in the findings), his "expenses for salaries, office, public relations, advertising, interest, signs, legal expenses and loss of his own time." Since the judge found that either of the two misrepresentations was a sufficient basis for liability, and since we hold that the judge's findings as to the zoning support the judgment, we need not concern ourselves with the findings as to the financing.

The judge's findings establish liability under the well-settled rule that "'the charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive.' . . . Such a representation, intended to induce action, may be actionable when the [other party] relies on it to his detriment." *Snyder* v. *Sperry & Hutchinson Co.,* 368 Mass. 433, 444-445 (1975). *Levy* v. *Bendetson,* 6 Mass. App. Ct. 558, 564-565 (1978) (rescission). The findings are not clearly erroneous (Mass.R.Civ.P. 52[a], 365 Mass. 816 [1974]), and the judgment is therefore affirmed.

The judge found that: "During the course of the nego-
tiations, Saunders inquired about the zoning status of
the subject property. Goodman stated at various times
in response to the inquiries that all zoning and building
permits were in order and that Saunders was not to
worry because Goodman had everything taken care of."
She thus accepted Saunders' testimony that: "He [Good-
man] said to me that all of the zoning and building per-
mits were in order and that I didn't have to worry about
that, that was his job as the developer. And I said,
'Well, I had heard that there were problems,' and he said,
'There aren't any problems and I have everything taken
care of.'" The judge thus had ample basis for finding
that the unqualified representation that the zoning was
in order was made by Goodman as of his own knowledge
– as something he had "taken care of." The judge was
likewise justified in finding that the representation was
false, for the zoning was not in order. The five-year
period, during which the order of June 6, 1966, author-
ized construction, had expired, and the permissive use
could have been preserved only if it had been "exercised"
by June 6, 1971. But the judge could accept the finding
in the cease and desist order (admitted in evidence with-
out limitation) by the building commissioner, whose au-
thority to issue building permits depended on the ex-
istence of the permissive uses granted in the 1966 order,
that those uses had not been exercised by June 6, 1971,
and therefore had expired.[3] This is buttressed by the
judge's finding that "[n]othing had been built." Just
what had been done on the tract before June, 1971, when
the 1966 order was to expire is not clear, but DiCarlo
testified that the foundation permit was never used and

---

[3]The defendant points to various other documents by Newton of-
ficials which might be viewed as suggesting that they regarded the
permissive uses as continuing after June of 1971. But the judge was
not clearly wrong in accepting the explicit finding in the cease and
desist order rather than drawing a contrary inference from the
speculative possibilities indicated by those documents.

that the activities on the tract could be described as site preparation rather than construction. See *Smith* v. *Board of Appeals of Brookline,* 366 Mass. 197, 200-201 (1974); *Murphy* v. *Selectmen of Manchester,* 1 Mass. App. Ct. 407, 409 (1973).

Moreover, the zoning situation was susceptible of knowledge for it depended on facts which were ascertainable — the expiration date of the 1966 order and whether by that date the order had been utilized for construction. At the very least it was easily ascertainable that the factual situation cast doubt on the viability of the order on which the project depended. The fact that the expiration date had passed necessarily created an uncertainty which could not be allayed by such preliminary site preparation as had occurred. On the facts, as Goodman could have ascertained them, it was obviously misleading to assert that — as Goodman's representation led Saunders to believe — the zoning was firm and unequivocally authorized the construction of the units. This "was a statement of fact although it involved a question of law." *Kerr* v. *Shurtleff,* 218 Mass. 167, 172-174 (1914) (representation of authority to grant a dental degree). *Kannavos* v. *Annino,* 356 Mass. 42, 49 (1969) (zoning and building violations not disclosed). *Lyman* v. *Romboli,* 293 Mass. 373, 374 (1936). See *National Car Rental System, Inc.* v. *Mills Transfer Co.,* 7 Mass. App. Ct. 850, 851-852 (1979).

The plaintiff testified that he relied on the representation in entering into the sales agency contract, and the judge could well have believed that he did. It was a question of fact. *Levy* v. *Bendetson,* 6 Mass. App. Ct. at 563-564. We do not believe this testimony is vitiated by the contract provision to which the defendant points and which excluded noncompliance with zoning requirements from the list (in the definition of force majeure) of causes for termination of the project which would disentitle Saunders to commissions otherwise earned. Saunders' risk was in any event great and his investment con-

siderable. The court could well have believed his testimony that he would not have embarked on the venture if he knew that, as matters stood, it was questionable whether the project could be built at all. The judge was certainly not clearly wrong in finding that "Saunders relied on the representation about zoning notwithstanding the fact that the contract provided some protection should the zoning problems interfere with the project [citing] *Lyman* v. *Romboli,* 293 Mass. 373."

The defendant places great emphasis on his contention that the plaintiff's losses were not proximately caused by the zoning difficulty but rather by various other factors, including (as put in his brief), "[t]he risky venture itself . . . the difficulty of preselling an unconstructed unit and the change in the terms of the sale . . . ." The contention is sufficiently answered by the judge's findings that the cease and desist order "was well publicized and this caused traffic of potential customers and interest in the units to diminish. This publicity was a substantial factor in Saunders' failure to sell twenty-five percent of the units . . . ." Saunders, as the judge found, "knew that the venture was a high-risk one"; but the plaintiff's "just complaint is that, because of the misrepresentations, the hazards of the distributorship [sales agency] were vastly greater than the plaintiff[ ] had reason to believe them to be." *Rice* v. *Price,* 340 Mass. 502, 508 (1960). The flaw in the zoning created an additional risk which the plaintiff was not prepared to undertake, and that flaw, as the court found, substantially affected his ability to recoup his investment.

That other factors may also have contributed to the loss *is not* material so long as the concealed flaw in the zoning was an operating factor. *Hotaling* v. *A. B. Leach & Co.,* 247 N.Y. 84, 92-93 (1928) (out-of-pocket loss caused by concealed weakness of investment plus demoralized market conditions). See *McCarthy* v. *Brockton Natl. Bank,* 314 Mass. 318, 327-328 (1943) (out-of-pocket loss caused by misrepresentation by bank officer that O was connected

with the bank plus O's absconding with plaintiff's stock). Compare *Graci* v. *Damon,* 6 Mass. App. Ct. 160, 164-165 (1978), *S.C.,* 376 Mass. 931 (1978). See also *Fottler* v. *Moseley,* 185 Mass. 563, 565-566 (1904) (*S.C.,* 179 Mass. 295 [1901]), in which a plaintiff was induced to hold (rather than sell) stock by misrepresentation as to previous sales of that stock, but his loss resulted from embezzlement by an officer of the corporation. The court rejected the contention that this "should be treated as a new and independent cause of the loss." The court said: "It would be unjust to the plaintiff in such a case, and impracticable, to enter upon an inquiry as to the cause of the fall in value, if the plaintiff suffered from the fall wholly by reason of the defendant's fraud. The risk of a fall, from whatever cause, is presumed to have been contemplated by the defendant when he falsely and fraudulently induced the plaintiff to retain his stock." This case is cited and quoted in *David* v. *Belmont,* 291 Mass. 450, 452-453 (1935), involving misrepresentations which induced a plaintiff to purchase as well as to hold certain stock. In that case no question was raised whether it was necessary that the matters represented (which do not appear in the opinion) be a factor in the loss. In view of the judge's findings, we need not consider the significance of the *Fottler* and *David* cases, which Professor Prosser refers to as exceptions to the rule, generally followed by other courts, "restrict[ing] recovery to those damages which might foreseeably be expected to follow from the character of the misrepresentation itself." Prosser, Torts § 110, at 732 (4th ed. 1971).[4]

*Judgment affirmed.*

---

[4] We do not believe that the exclusion of evidence to which the defendant objects requires further proceedings. The defendant has not demonstrated prejudice from the exclusion of a question asking Saunders to list the complaints he made that the trustees, Goodman

and DiCarlo, impaired his sales effort. He has not attempted to
analyze the offer of proof he made and its relationship to the other
*testimony* (before and after the offer) to indicate just how its content
could have significantly affected the finding that the cease and desist
order interfered with the sales effort. *Carney* v. *Bereault,* 348 Mass.
502, 509 (1965). Cf. *Crowe* v. *Ward,* 363 Mass. 85, 90 (1973). See
Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). At most it
suggests a possibility of testimony of additional contributing factors
which would not vitiate the causation which the judge found.

Nor do we see any abuse of discretion in the exclusion of DiCarlo's
testimony as to his experience in obtaining building permits for other
projects. See *Carney* v. *Bereault,* 348 Mass. at 510. It was irrelevant
to the question whether or not the permissive use had expired.