No. 8294.

WRIGHT ET AL. *v.* CRABBS ET AL.

PROMISSORY NOTE.—*Illegal Consideration.—Grain-Broker.—Margins.*—In a suit upon a promissory note, it was found specially that the note was

given to a grain-broker in consideration of commissions and advances upon wheat purchased by him for the maker, that the maker of the note had entered into a combination with others to purchase through the plaintiff and other brokers, for delivery during a certain month, more wheat than there was in the market, thereby forcing the price to a high rate, with a view to make profit on settling with sellers failing to deliver. Whether the plaintiff was a party to this combination, or had knowledge of it, was not found. A conclusion of law that the note was valid, and the plaintiff entitled to recover upon it, was held to be correct.

From the Shelby Circuit Court.

*T. B. Adams* and *L. T. Michener,* for appellants.

*E. P. Ferris, W. W. Spencer* and *J. S. Ferris,* for appellees.

WORDEN, J.—Action by the appellees against the appellants upon a promissory note executed by said George M. Wright and said Cyrus Wright, in his lifetime, payable to the plaintiffs, the appellees herein, for the sum of eleven hundred and four dollars and a fraction, with attorney's fees, if suit be brought upon it, dated July 2d, 1873, and payable two years after date with ten per cent. per annum interest.

The defendants answered in three paragraphs; the first alleged that the note was given without any consideration, and the second and third alleged matters intended to show that it was given upon an illegal consideration.

Issue, submission to the court for trial, and, at the request of the parties, a special finding of the facts, with conclusions of law thereon, was made.

The following is the special finding, with the conclusions of law thereon:

"Prior to June, 1873, the deceased, Cyrus Wright, with others, employed the plaintiffs, who were grain-brokers in Toledo, Ohio, to make or procure contracts for them, for the purchase by them of grain known as 'Michigan Amber wheat;' that the intention of the deceased, and the others who were acting with him, was to purchase and hold contracts, or 'options,' for the delivery of wheat to them in the month of June, of that year, to an amount largely in excess of the quantity of such wheat which would be in the market

at that time, and thus compel parties, who had wheat of that kind to furnish in discharge of their contracts, to pay the difference or margin; that at the time of making such arrangements there were only sixty or seventy thousand bushels of such wheat in the market at Toledo, and the intention of the parties to the combination was to purchase or procure contracts, or ' options,' for at least double that amount; that the contracts or 'options' should all mature during that month, and all available wheat would thus be delivered on their contracts; other brokers, if necessary, were to assist in carrying out the plan. It was expected that some one of the interested parties would, at the agreed time, bid a high price for such wheat; that this would fix the price and govern in the settlement of the outstanding contracts; that the only difficulty in the way was to purchase the necessary amount of ' options,' and to overcome this difficulty, the plaintiffs were to get other firms of brokers to assist them. Contracts to the amount of 100,-000 to 130,000 were purchased by the plaintiffs for the deceased and the others, but the intended speculation was a failure; no ' corner' in that kind of grain was created. It turned out that there was more wheat of that kind in the market than was needed to fill the contracts. The plaintiffs urged the deceased and others acting with him, to buy more wheat, and frequently sent to them for money to keep up ' margins.' The first day of July, 1873, found the deceased and the others with contracts for a large quantity of wheat on their hands, which they had to sell at a less price than cost. Nothing was said about the actual delivery of the wheat contracted for, but parties who had contracts to fill were expected to pay the difference. It does not appear how much wheat the deceased had contracted, or whether or not any wheat was actually delivered to him, or that it was expected any wheat should be actually delivered to him.

" The court further finds that afterwards, viz., on the 20th day of July, 1873, on a settlement between the plaintiffs

and the deceased, concerning such matter, the note which is sued upon in this action was made and given by the said Cyrus Wright and the said George M. Wright.

"The court further finds that there is due upon said promissory note, of principal and interest, the sum of seventeen hundred and two dollars, and that a reasonable attorney's fee in this case, for plaintiff's attorney, is ninety dollars.

"As a conclusion of law the court finds that the said promissory note is legal and valid, and that the plaintiffs are entitled to judgment for the amount thereof as aforesaid, and for said amount for attorney's fees.     A. C. DOWNEY."

The defendants excepted to the conclusions of law deduced by the court from the facts found, but the exception was overruled and judgment rendered for the plaintiffs.

The supposed error of the court below in its conclusions of law presents the only question involved here.

We can not say that there was any error in the conclusions of law.  The finding does not show that the plaintiffs were parties to any arrangement or combination to get up a "corner" in wheat, or to do anything else in violation of law or against public policy; nor, indeed, that they had notice of such intention on the part of Cyrus Wright, or those acting with him.  Cyrus Wright, with others, it appears, employed the plaintiffs to purchase wheat for them.  This, so far as we can see was a legitimate business.  It is not found that the plaintiffs knew anything of the purpose or intention of Wright and those acting with him in purchasing the wheat, or of the combination mentioned in the finding.

It is found that "other brokers, if necessary, were to assist in carrying out the plan," and "that the only difficulty in the way was to purchase the necessary amount of 'options,' and to overcome this difficulty the plaintiffs were to get other firms of brokers to assist them."

These portions of the finding are the only ones that present any difficulty.  The significance of the finding, however,

Wright *et al. v.* Crabbs *et al.*

should not be construed to extend beyond what the terms employed fairly import.   It must be borne in mind also that the burden of making out the defence rested upon the defendants.   It was for them to make the facts constituting a defence affirmatively appear.   *Parker* v. *Hubble,* 75 Ind. 580.

The language of the finding does not, as we think, fairly imply that the plaintiffs took the employment from Wright and others in purchasing the wheat, with a view of aiding the latter in accomplishing the purpose mentioned, nor that they had notice of such purpose.

The finding shows that the plaintiffs were to get other firms of brokers to assist them in purchasing the options necessary to carry out the plan ; but this is consistent with the idea that the plaintiffs may have been entirely ignorant of the plan or the purpose which Wright and others had in view.   Wright and others, for aught that appears in the finding, may have advised the plaintiffs of the amount of options they thought necessary to carry out the plan, and have instructed them as to the amount required, without disclosing to them the plan or the object of the purchases.

The fact that " the plaintiffs urged the deceased, and others acting with him, to buy more wheat, and frequently sent to them for money to keep up margins," does not seem to us to have any special importance.   We suppose the more wheat the plaintiffs purchased for Wright and others, the more commissions they would earn ; and we see nothing in the facts thus stated that bears upon the question involved.   It seems to us that an answer setting up the facts found by the court would be fatally defective on demurrer for want of facts.

The judgment below is affirmed, with costs.

Petition for a rehearing overruled.