## REBECCA F. COFFING *vs.* JOHN L. DODGE.
## SAME *vs.* SAME.

Berkshire.    September 8, 1896. — January 6, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Liability of Stockholder in Foreign Corporation — Action — Pleading — Statute of Limitations — Damages.*

An action cannot be maintained to enforce the liability of a stockholder in a foreign corporation, where there is no allegation that the liability is contractual, nor that it has been so construed by the courts of the foreign State, and where there are no allegations from which it can be seen that no injustice to others will be done by entertaining the action.

No recovery can be had under a supplemental declaration, which sets up as the foundation of the plaintiff's right to recover an alleged rescission, made after the commencement of the action, of the contract upon which the action itself is founded.

At the trial of an action, the declaration in which contains three counts, one for breach of the defendant's undertaking to invest the plaintiff's money safely, one for negligence in putting his money as his agent into worthless securities, and one for fraudulent representations whereby the plaintiff was induced to allow the defendant to place his money in the investments mentioned, if it appears that all of the investments except the last one were made more than six years before the date of the writ, and the defendant contends that the cause of action on account of all the transactions except the last is barred by the statute of limitations, it is error for the judge to withdraw the statute from the consideration of the jury.

In an action upon counts for breach of a contract to invest the plaintiff's money safely, for negligence in such investment, and for fraudulent representations as to the investment, the measure of damages is the difference in value between the securities delivered and safe securities; and the time as to which damages are to be assessed under the first two counts is the time when the plaintiff acquired the securities; and the same rule is to be followed as to the third count, unless facts appear which warrant the application of a different rule, in which event the rule must depend upon the facts disclosed.

CONTRACT, with counts in tort.    At the trial in the Superior Court, before *Maynard*, J., the jury returned a verdict for the plaintiff; and each party alleged exceptions.    The facts appear in the opinion.

The cases were argued at the bar in September, 1896, and afterwards were submitted on briefs to all the judges.

*M. Wilcox*, (*F. H. Wright* with him,) for the defendant.

*H. C. Joyner & G. C. Warner*, for the plaintiff.

BARKER, J.  The action was begun on April 22, 1895, by a writ in contract.  The original declaration had five counts, the first of which was in contract for breach of the defendant's undertaking to safely invest for the plaintiff money which he promised to invest safely for her as her agent.  The third was for fraudulent representations, whereby the plaintiff was induced to allow the defendant to invest the plaintiff's money in certain mortgages which turned out not to be good.  The fourth count was for negligence in investing the plaintiff's money in worthless notes or bonds, and the fifth was to enforce the defendant's liability as a stockholder in a corporation which had guaranteed certain notes and mortgages belonging to the plaintiff.  Before the trial a supplemental declaration was added, in which the plaintiff alleged a rescission by herself of the contract under which her money was invested by the defendant in the mortgages, and sought to recover the money with interest.

At the trial the plaintiff relied upon the first, third, fourth, and fifth counts of the original declaration, and upon the supplemental declaration.  At the close of the evidence the plaintiff's counsel were asked by the court if they would elect upon what counts they relied, and replied that they were not prepared to make an election, but relied on the above mentioned counts of the original declaration and on the supplemental declaration.  The court ruled that the plaintiff could not recover upon the fifth count, even if she proved all the allegations therein made, and also that she could not recover in this action under the supplemental declaration, and the case was submitted to the jury on the first, third, and fourth counts of the original declaration.  The jury returned a general verdict for the plaintiff, and both parties have entered bills of exceptions in this court.

The plaintiff's bill states exceptions to the ruling that she could not recover under the fifth count, and also to the ruling that she could not recover under the supplemental declaration.

The ruling that the plaintiff could not recover upon the fifth count of the original declaration was right.  We do not enforce foreign statutes which provide for bringing into court the creditors and stockholders of a foreign corporation in order to liquidate its affairs, or which impose, for the benefit of the creditors of a foreign corporation, a penal liability upon the stockholders.

*Erickson* v. *Nesmith*, 15 Gray, 221, and 4 Allen, 233. *Hutchins* v. *New England Coal Mining Co.* 4 Allen, 580. *Halsey* v. *McLean*, 12 Allen, 438. *New Haven Horse Nail Co.* v. *Linden Spring Co.* 142 Mass. 349. *Post & Co.* v. *Toledo, Cincinnati, & St. Louis Railroad*, 144 Mass. 341. *Bank of North America* v. *Rindge*, 154 Mass. 203. It is true that in *Hancock National Bank* v. *Ellis*, 166 Mass. 414, we sustained upon demurrer a declaration to enforce the liability of a stockholder in a Kansas corporation. But it was there alleged that the liability was contractual, arising from the subscription of the defendant for his stock, whereby he guaranteed the payment sought to be recovered, and that the liability had been so construed in Kansas by its court of last resort, and other allegations showing that no injustice could be done to the defendant or to the corporation or other creditors or stockholders by entertaining the action. Here there is no distinct allegation that the liability is contractual, nor that it has been so construed by the courts of Kansas, nor are there any allegations from which it can be seen that no injustice to others will be done. The ordinary rule must be applied, and we need not consider whether such a count could be joined in one action with the third and fourth counts, which were in tort and not for the same cause of action as this count.

The ruling that the plaintiff could not recover under her supplemental declaration, filed long after the commencement of the action, was also right. That declaration set up as the foundation of the plaintiff's right to recover an alleged rescission, made after the commencement of the action, of the contract upon which the action itself was founded, and which the plaintiff had affirmed by bringing the action for its breach. See *Connihan* v. *Thompson*, 111 Mass. 270; *Whiteside* v. *Brawley*, 152 Mass. 133. Even if the bringing of the suit upon the contract did not conclusively determine the plaintiff's right to rescind, because of her ignorance of the facts subsequently disclosed, she cannot be allowed to maintain the present action upon a rescission made after the action was commenced. We do not consider whether enough was in fact done to work a rescission if she still had a right to rescind, or whether such a count, which is in contract for the recovery of the consideration paid, can be joined with the third and fourth counts in tort.

The defendant's bill brings up exceptions to the ruling of the court as to the effect upon the action of the statute of limitations, and as to the measure of damages.

The investments in respect of which the plaintiff sought to recover under the counts which went to the jury were made on June 28, 1888, August 18, 1888, January 26, 1889, and May 18, 1889. Her writ was sued out on April 22, 1895, more than six years after the time when all the investments were made except the last one. The defendant contended that the cause of action on account of all the transactions, except the last, was barred by the statute of limitations, but the court instructed the jury as follows: " There is a rule of law, and it is set up in this case, that in certain cases the writ must be brought within six years from the time the cause of action accrued, and the question is whether it accrued at the time of the first loan, or at the time the final loan was made. That is a question of law to be passed upon by the Supreme Court. And for the purposes of this case, I instruct you that you need not trouble yourselves about any part of it being outlawed."

As the case stood, this ruling was clearly wrong. The presiding justice was submitting to the jury three counts, each relating to all of the investments above specified. One count was for breach of the defendant's undertaking to invest the plaintiff's money safely, one for simple negligence in putting her money as her agent into worthless securities, and one for fraudulent representations whereby the plaintiff was induced to allow the defendant to place her money in the investments mentioned. It is plain that the ordinary or six years' statute of limitations applied to each of these counts, the count in contract, the count for negligence, and also to the count for fraud, unless it should be found by the jury that the defendant had fraudulently concealed from the plaintiff the cause of action on which the count declared, in which case only, under the provisions of Pub. Sts. c. 197, § 14, the plaintiff's action would not be barred by the statute until six years after she discovered that she had the right of action.

The plaintiff now contends that, by reason of the statute last cited, no part of her cause of action is barred. But the bill of exceptions contains no intimation that this contention was made

at the trial, and the clear implication from the language of the instruction itself is to the contrary : " The question [as to when the cause of action arose] is whether it accrued at the time of the first loan, or at the time the final loan was made. That is a question of law to be passed upon by the Supreme Court." If the contention that the defendant had fraudulently concealed the cause of action from the plaintiff, and that no part of her right of action was barred because she had not discovered it until within less than six years before bringing her suit was in fact raised at the trial, the instruction given was still more inadequate to the case than if the question then raised was whether the six years began to run from the time when the first loan was made or when the last was made.

In substance the ruling given withdrew the statute of limitations from the consideration of the jury. The bill of exceptions does not disclose a state of evidence upon which it could be ruled, as matter of law, that the ordinary statute of limitations did not apply, and that no part of the plaintiff's cause of action was barred. The ruling given was therefore wrong, and the defendant's exception to it must be sustained.

The evidence tended to show that the investments of the plaintiff's money to which the counts submitted to the jury related were in mortgages upon lands in Wichita, Kansas, securing notes payable upon time with semiannual interest, and guaranteed by a Kansas loan and investment company; that the plaintiff held these securities as investments, relying upon the defendant's representations, and receiving the interest up to April 1, 1890, when interest due upon one of the mortgages was not paid, and that after that time she received no interest upon any of the loans ; and that by purchases of the equities and foreclosures made during the years 1891 and 1892 she became the owner of the lands covered by the mortgages, and evidence was introduced by both parties to show the fair market value of the lands covered by each of the mortgages, both at the time when the respective mortgages were received by the plaintiff and at the times when she became the owner of the mortgaged lands. Upon the question of damages the jury were instructed as follows: " This is the rule of damages. The measure of damages is the difference

between the value of the securities at the time plaintiff got the property into her possession and the face value of the securities at that time."

In considering the exception to this ruling it is to be remembered that it was to be applied by the jury to three counts, one of which was in contract, one in tort for negligence, and one for fraudulent representations, and that, as the verdict is general, we cannot know whether the damages found were given for a breach of contract alone, for mere negligence, or for the consequences of fraudulent representations. The instruction applies one rule to all the counts, and the exception to it must be sustained unless the rule was the correct measure of damages if they were given for breach of contract, or for mere negligence, as well as for the consequences of fraudulent representations.

The evidence tended to show that, when the plaintiff became the owner of the mortgages, the property covered by them was worth little more than the amounts of the mortgage loans, and that in the years 1891 and 1892 the property covered by the mortgages was worth not more than half the amount of the loans. If so, it might be found by the jury that the value of the mortgages was depreciating from the time when the plaintiff acquired them. She alleges in the third count of her declaration that upon some of the mortgages interest was in arrear within six months from the time of her purchase, and that it was so upon all within eighteen months, and it must be assumed that the time as of which the jury were told by the instruction to assess the damages resulting from the several investments was a time considerably subsequent to that when the plaintiff's attention must have been directed to the value of the mortgages by non-payment of interest, and that as to every investment the ruling required the damages to be assessed as of a time two or three years after the date of the breach of contract if the damages were given for such a breach, and after the property the too little value of which was the damage sought to be recovered, was wrongfully foisted upon her by the negligence or the fraud of the defendant.

As to the damages in contract, it is plain that, the contract being to invest the money safely, its breach was complete when the plaintiff's money was put into unsafe investments. The

essence of the transaction was the delivery of unsafe investments upon a contract to invest safely, and the measure of damages for the breach was the difference in value between the mortgages actually delivered and safe mortgages. Although it did not then appear that the quality of the mortgages was inferior to that which the defendant had undertaken they should be, the fact must then have existed or there was no breach; and the only measure of the wrong done the plaintiff by the breach was the then difference between the value of the mortgages and safe mortgages. If at the time there was a market value for such mortgages if everything was known about them, market value would furnish the amount; and if there was no market by which their value could be ascertained, other evidence must be resorted to. But the measure of damages was the difference in value at the time of the breach of contract; and as applied to the count in contract the instruction was wrong in not calling the attention of the jury to the true rule, and in giving to them as the absolute measure of damages the difference between the value of the securities at a date long subsequent and their face value at that time.

So as to the damages for simple negligence. The wrong which resulted from the defendant's negligence was merely that the plaintiff acquired unsafe instead of safe mortgages for her money. This wrong was complete when she acquired them, and the measure was the difference in value between what she got and what she would have had if the defendant had used due care, namely, between the unsafe mortgages which she got and good mortgages, and it was to be measured as of the time when it accrued, and by the test of market value if there were means of applying that test, and if not, upon such evidence as could be had.

The ordinary rule for the ascertainment of damages for false representations or fraud, where the loss to the plaintiff results from the fact that property which he acquires in consequence of the fraud or false representations is of a poorer quality or of less value than it would have been if he had not been cheated, is the same which governs the assessment in cases of breach of contract, or for negligence, where the occasion of the loss is the poor quality or value of property acquired by the plaintiff. This, as held in *Nash* v. *Minnesota Title Ins. & Trust Co.* 163

Mass. 574, 581, is commensurate with the wrong done him, and will ordinarily make good his loss, and is to be applied unless in the particular case there is something in the facts disclosed which warrants the application of a different rule.

Looking to the bill of exceptions for evidence of facts tending to support the count for fraud, we find that there was evidence tending to show that the defendant falsely represented that the loans were for not more than one third of the value of the mortgaged property, when in fact the property was worth but little more than the amount of the loans; that he held some of the mortgages of the same company as investments of his own funds, while in fact he held them not as investments, but was selling them for profit, having bought them at a discount; and that he told her that the appraisers upon whose estimates of value the loans were made were fair men, whereas in fact they were neither fair nor disinterested.     The bill also shows that there was evidence that the defendant told her that the company which guaranteed the mortgages was paying dividends semiannually upon its stock, and that he himself held some of the stock paying semiannual dividends which the company guaranteed, and evidence tending to show that the company paid semiannual dividends for but eighteen months.     But there was no evidence tending to show that the statements that the defendant held some of the stock or that the company guaranteed the dividends were false, nor that the statement that the company was paying dividends semiannually on the stock was not true when made.     The bill of exceptions states no other evidence tending to prove the allegations of the third count of the declaration that the defendant told her that he knew the securities of the company to be safe as investments, and that the investments would be in all respects safe and desirable, and that he advised her to keep the matter of such investments secret, and not to consult with regard to the proposed investments with the financial advisers with whom she was wont to consult.     There was also evidence tending to show that the plaintiff and defendant had been friends and neighbors for many years, that he was the president of the bank in which she kept her deposits and its managing officer, that he was familiar with her financial condition and had previously invested for her in his discretion several thousand dollars

which she had intrusted to him for that purpose. Also that she was a widow and was about eighty-three years of age at the time of the trial, and that she held the mortgages as investments, relying upon the defendant's representations, receiving interest up to April 1, 1890, when interest due was not paid upon one of the loans, and that after that date she received no interest upon any of them, and that during the years 1891 and 1892, by foreclosure or purchase of the equities, she became the owner of the mortgaged properties.

In deciding whether the instruction as to damages was correct, as applied to the count for fraud and false representations, we must deal with the case in view of the facts which the evidence stated tended to prove; but it is to be noted that, even if the verdict for the plaintiff was upon this count, which we do not know, we cannot assume in her favor that all of the things which the evidence tended to prove were found, but only that enough was found to sustain a verdict for the plaintiff.

The essential matters in the assessment of damages are the fixing of the time as of which it is to be made, the measure to be applied as of that time, and the determination of the amount by means of pertinent evidence. We see no other measure to be applied in cases where the loss is because of the unsafe quality or deficiency in value of an investment than the difference between the value of the investment as it actually was and as it should have been; and the plaintiff in effect contends for a measure of this kind, namely, the difference between the value of the mortgaged property when she acquired absolute title to it and the net amount at that time of her money which remained in it. The difficulty with the instruction is that the time when the difference is to be ascertained is postponed, from the time when the defendant's acts became an actionable wrong beyond the time when circumstances showed that the representations upon which she relied were untrue, to the later date when she changed her investments in mortgages into land by acquiring the absolute title.

If the plaintiff was found to be an aged and inexperienced woman, who confided in the defendant because of his friendship and his position, and because she had before trusted him with the making of investments, and who took these mortgages be-

cause of his false representations that the loans were not in excess of one third of the value of the mortgaged property, that the appraisers were fair men, and that he was himself holding similar mortgages as investments of his own property, and she held the mortgages as investments without anything to put her upon her guard until interest was defaulted on April 1, 1890, it seems to us that it would be fair to her, and not unjust to the defendant, to hold that her damages should be assessed as of the time subsequent to that date, when reasonable inquiry as to the circumstances of the default would have disclosed to her the true condition and value of her mortgages. The only particular in which damages so assessed could exceed the damages assessed as of the time when she had first suffered an actionable wrong, in consequence of the defendant's fraud, would be the depreciation in value in the mean time due to the depreciation in value of the mortgaged property during the same period. While we do not say that the ordinary investor who buys mortgages is not expected to exercise from the time when he acquires them reasonable diligence to see whether the value of the mortgaged property is depreciating, we do think that if the plaintiff was induced, by the fraudulent representations which the evidence tended to prove, to take these investments, and to hold them without further inquiry until interest was defaulted, she was doing only what under the circumstances was the natural consequence of the defendant's wrongful conduct, and that it is just that he, and not she, should bear such loss as was the natural consequence of keeping the investments, as the defendant must have been aware from the circumstances she probably would do, and as he must have expected her to do.

But when interest was defaulted, on April 1, 1890, this was a circumstance which should have led her to inquire into the true condition of her mortgages, and whatever such inquiry would have disclosed material to her rights against the defendant she should be charged with knowledge of. Her wrong, inflicted before, must then have been ascertained, both in its nature and extent, and we see no reason why it should not be measured as of that time. If so, the measure would be the difference between the amount of her investment as it then stood and the then value of her securities, including the value of the lien, the personal

obligation of the borrower, and the value of the guaranties, if any. Most likely there could be no test of the value of such defaulted securities by sales in market, and if so, very probably evidence of the value of the mortgaged property when she acquired absolute title to it might be resorted to in determining the value of what she had obtained for her money. But in any event the instruction given was wrong, in directing the jury, in substance, that the time as of which the damages were to be measured was the time when she got the absolute title to the mortgaged property.

The time as of which damages are to be assessed under the count in contract, and under the count for negligence, is the time when the plaintiff acquired the mortgages; and the same rule is to be followed in assessing damages upon the count for false representations, unless facts appear which warrant the application of a different rule, in which event the rule must depend upon the facts disclosed. The rule given in the instructions was wrong in any aspect of the case presented by the bill of exceptions, and for that reason the defendant's exception must be sustained.

We regret that it seems impossible to restrict the new trial to the question of damages alone. From the amount of the verdict, very likely the jury found damages in respect of each of the mortgages, and it is probable, as the counsel for the plaintiff strongly contend, that they found the verdict upon the count for fraud. If the plaintiff had elected to rely upon that count alone, or if the jury had been asked upon which count they found the verdict, the new trial might be restricted to the question of damages. But the bill of exceptions leaves it wholly uncertain upon which count the jury found for the plaintiff, and therefore it is not determined that the defendant broke his contract, or that he was negligent, or was guilty of fraud, but only that he had been at fault in some one of the three ways charged.

If the case is again submitted to the jury upon the three counts, it will of course be necessary that much fuller instructions should be given, both upon the statute of limitations and the matter of damages.

> *Plaintiff's exceptions overruled. Defendant's exceptions sustained.*