ABRAHAM GREENBURG *vs.* GEOFFREY WHITNEY & others.

Suffolk.   March 16, 1923. — May 25, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & PIERCE, JJ.

*Stockbroker. Damages,* For breach of contract.

A Boston stockbroker, who through a New York correspondent has purchased shares of corporate stock for a customer and has left the shares in the possession of the New York correspondent, if he fails to deliver the shares to the customer on demand and on tender of payment of a sum owed to him by the customer, is liable to the customer in an action of contract for the market value of the stock on the date of demand less the amount of the customer's debit balance, although under the contract between the customer and the broker, the " securities held as collateral on the customer's marginal account may be used by the brokers . . . in making loans and deliveries," and the reason that the defendant could not make delivery to the plaintiff was that, while the stock was in the possession of the New York correspondent, the defendant through him executed for another customer a " short " sale of the stock without notifying the New York correspondent that it was a " short " sale or requesting him to borrow the

stock in the usual way to make delivery of the stock so sold so that the plaintiff's stock in the New York correspondent's hands might remain intact, and, in consequence of a corner in the stock created by a third party, the New York Stock Exchange, where it was being dealt in, suspended all dealings in it and ordered it stricken from the list of securities dealt in on that exchange.

The only market for the stock which was the subject matter of the action above described, at the time of the plaintiff's demand, was on the New York Curb Exchange, where, by reason of the conditions attending the corner, the price was artificially enhanced; but it was *held*, that the plaintiff was entitled to damages computed on the basis of the market price on the curb exchange, the hard situation, which had arisen through no fault of his, not making an exception to the law of damages.

CONTRACT, against a firm doing business as stockbrokers under the name Whitney and Elwell, for damages resulting from a failure of the defendants to deliver to the plaintiff twenty-four shares of the capital stock of Stutz Motor Company, twenty of which shares, the plaintiff alleged, the defendants had purchased for him and four of which were a stock dividend received by the defendants while they held the shares for the plaintiff's account. Writ dated April 21, 1920.

In the Superior Court, the action was tried before *Aiken*, C.J. Material evidence is described in the opinion. At the conclusion of the evidence, the Chief Justice ordered a verdict for the plaintiff in the sum of $13,572.88, which was the value of the twenty-four shares at $712.50 per share, at which they sold on the New York Curb market on April 20, 1920, the date of the plaintiff's demand, less $4,807.95, the amount of debit balance due to the defendants from the plaintiff, and with interest on the balance from the date of the writ. After the resignation of the Chief Justice, the action was reported to this court for determination by *Wait*, J.

*A. T. Johnson*, for the defendants.

*J. Cavanagh*, for the plaintiff.

DECOURCY, J. The following facts were undisputed. The plaintiff, a customer of the defendants, on March 8, 1920, gave them an order for the purchase of forty shares of Stutz Motor Company stock; and he had on deposit with them the required margin. On the following day he received

a statement or confirmation that the purchase had been made at $122.25 per share. A delivery of this stock was made on March 9, to F. B. Keech and Company, members of the New York Stock Exchange, who were correspondents of, and executed the order for, the defendants. Keech and Company continued to hold the stock for the defendants' account until March 26, 1920, when the plaintiff sold twenty shares at $244.75 per share: and the defendants reported the sale as made on that day and confirmed the sale on the following day. A stock dividend of twenty per cent was declared, payable to stock holders of record on April 5. On April 7 the defendants wrote the plaintiff: " We wish to confirm that we are carrying for your account: 20 shares Stutz Motors, and that we will be glad to deliver this to you upon payment of your debit balance as soon as we receive it from our New York Correspondent, which we trust, will be in the next few days." The plaintiff on April 20, 1920, offered to pay to the defendants the balance due on his account and demanded the twenty shares of Stutz stock remaining on his account, and the four shares stock dividend, — which was deliverable on April 15. The defendants refused to comply, stating that they were unable to procure the stock.

The inability of the defendants to deliver the plaintiff's stock arose from these facts: On March 26, another customer of the defendants, Learoyd, Foster and Company, sold " short " through the defendants twenty-five shares of Stutz. The defendants executed this " short " sale through F. B. Keech and Company; but did not notify Keech and Company that this was to be a " short " sale, or request them to borrow stock in the usual way to make delivery on the Learoyd, Foster and Company sale, so as to leave intact the twenty shares remaining of the plaintiff's purchase. The plaintiff knew nothing of this " short " sale. In consequence of a corner in this stock created by one Alan A. Ryan, the governing committee of the New York Stock Exchange adopted a resolution on March 31, 1920, suspending dealings in Stutz stock; and on April 14 ordered the same stricken from the list of securities dealt in on the exchange.

The plaintiff's dealings were wholly with the defendants;

and if the oral order of March 8, 1920, stood alone, then, on payment or tender of the balance due, clearly he would be entitled to delivery of the twenty-four shares which they bought and were carrying for him on margin. The defendants contend, however, that this agreement was modified by the stipulations printed on the confirmation slips, which were sent to him in connection with all his purchases and sales. These, so far as applicable to the present case, were as follows: " It is agreed between customer and undersigned brokers: (a) that all orders for the purchase and sale of securities are received and executed subject to the rules and customs of the Boston and New York Stock Exchanges (and their Clearing Houses) with the distinct understanding that actual delivery is contemplated; (b) that all securities held as collateral on the customer's marginal account may be used by the brokers in their general loans, or in making loans and deliveries, and that the brokers are not required or expected to have at all times under their control free from all demands of other customers, securities of which, upon payment the customer may be entitled to demand delivery." It is conceded that a real purchase of the stock was made, followed by a delivery of certificates for forty shares, — so that no question can arise under clause (a). The only provision in clause (b) that seems pertinent is that stipulating that the securities held as collateral may be used by the brokers " in making loans and deliveries." We assume that at least the defendants were entitled to go to the jury on the question whether the plaintiff impliedly assented to or was bound by these terms, even if he did not read them. *McKinney* v. *Boston & Maine Railroad,* 217 Mass. 274, 276. *Secoulsky* v. *Oceanic Steam Navigation Co.* 223 Mass. 465. But the right thereby given to the defendants to use this Stutz stock " in making loans and deliveries," however broadly these terms be interpreted, was subordinate to their primary obligation to deliver to the plaintiff the number of Stutz shares they were carrying for him, whenever he should pay the balance he owed and demand the stock. Assuming that they could lawfully authorize Keech and Company to deliver the particular shares on hand, without the plaintiff's know-

ledge or consent, (see, however, *Adams* v. *Dick*, 226 Mass. 46, 53) they should have anticipated the likelihood of a demand by the plaintiff and have made the customary arrangement with the borrowing broker for a return or replacement of the stock.   They failed to do so; and the plaintiff was entitled to a verdict on the undisputed facts.

The defendants made an offer of judgment under G. L. c. 231, § 74, computing the value of the stock at $550 per share. Apparently Alan A. Ryan and Company and the Protective Committee on April 24, agreed upon that as the price at which members of the New York Stock Exchange who were " short " of Stutz stock should settle with their fellow members to whom they owed deliveries.   The plaintiff demanded $712.50, the price at which on April 20 when he demanded the stock, the shares were selling on the New York Curb, — the only place where the stock was then bought and sold.   He was entitled to its market value, and as of that date.   *Eastern Railroad* v. *Benedict*, 10 Gray, 212.   *Hall* v. *Paine*, 224 Mass. 62.   The application of this general rule works a hardship in the present case, because of the artificial enhancement of market value caused by the " corner " in Stutz stock.   But apparently the stock was freely bought and sold on the curb at that time.   If the plaintiff desired to repurchase, he could not do so for a lesser price, and presumably would go to the only market where the stock was then dealt in.   He was in no way concerned in the scheme of raising the price.   We cannot read into the law of damages an exception to meet a hard situation, when the plaintiff was free from blame, and the defendants failed to protect themselves.   Sedgwick on Damages (9th. ed.) § 249.   See *Knowlton* v. *Fitch*, 52 N. Y. 288, 295; *Wright* v. *Crabbs*, 78 Ind. 487; *National Bank of Commerce* v. *New Bedford*, 175 Mass. 257, 262.   It may be added that the ruling, that the defendants were bound to have at all times in their possession or under their control sufficient stock to satisfy the plaintiff's demand, was immaterial, in view of the undisputed facts.

The entry must be, judgment for the plaintiff on the verdict.

*So ordered.*