PATRICK McNULTY *vs.* C. HANDASYDE WHITNEY & others.

Suffolk.   October 10, 1930. — December 16, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Stockbroker. Sale,* Rescission, Ratification. *Deceit. Pleading, Civil,* Declaration. *Notice. Waiver. Damages,* In tort. *Practice, Civil,* Waiver of defect in pleading, New trial.

In the declaration in an action by a customer against a firm of stockbrokers, the plaintiff alleged that he was induced to instruct the defendants to buy for him a certain mill stock by misrepresentation by an agent of the defendants as to the dividend it was paying, and that thereupon the defendants, without the plaintiff's consent and in violation of their duty as brokers and of their instructions, sold him three hundred forty shares of the mill stock which they themselves owned; that the plaintiff sold a part of these securities before he knew of this violation of duty, and, when he learned the facts, rescinded the transfer of the securities he still owned, tendering them to the defendants and demanding the purchase price with interest from the date of sale; and that at the same time he demanded the difference between the purchase price of certain of the securities, which had been sold by him before he realized that the defendants had violated his instructions, and the sale price to him with interest. At the trial, the plaintiff testified that the misrepresentation was made to him on September 11; that he then purchased three hundred forty shares of the stock in five lots; that he learned of the falsity of the representation two days after the first purchase; that he complained to the defendants shortly thereafter that he had paid too much for the stock, but in his subsequent dealings with them did not refer to the misrepresentation; that in October he transferred his account to another brokerage firm and through them then sold two hundred twenty of the shares at a price lower than he had paid the defendants; and that he did not learn until the next June that the defendants had sold him shares which they themselves owned. The defendants at the trial did not object because distinct causes of action were set forth in one count. There was a verdict for the plaintiff. *Held,* that

(1) As the case was submitted to the jury, they may have found for the plaintiff either for the false representation or upon the ground of repudiation of the contract for breach of a fiduciary duty;

(2) Although such two causes of action should have been set out in separate counts, the defendant, by going to trial without objection on that ground, could not raise such objection after verdict;

(3) It was too late in June for the plaintiff to rescind the transaction on the ground of the false representation as to the dividends;

(4) The right to maintain the action for damages caused by the false representation was not affected by the loss of the right to rescind on that ground, nor was such a right of action barred by reason of the fact that the plaintiff had attempted to repudiate or rescind and in the same action had attempted to recover on that ground.

At the trial of the action above described, the plaintiff contended that he had employed the defendants as brokers, and that, in breach of their fiduciary duty, they had sold him securities of their own to their advantage and his loss. There was evidence of the following facts: In accordance with their custom the defendants after each purchase mailed to the plaintiff papers referred to as "confirmation slips." Those relating to the purchase of listed securities, after the names, addresses and date, began with these words: "Upon your order, we have this day bought for your account and risk"; then followed a statement of the details of the transaction. On the slips for the purchase of unlisted securities, after the name and address of the broker and the date, appeared the words, "Sold to," followed by the plaintiff's name, and under this the name and amount of the stock and the price. Upon receiving the first slip showing a sale to the plaintiff of the mill stock, which was unlisted, he noticed that no commission had been charged and asked the agent of the defendants if there was not some mistake, and was told: "That is all right. Never mind. That is all right now. We didn't charge any commission." *Held*, that it was proper to refuse to rule that the confirmation slips were notice to the plaintiff that the defendants were selling to him their own stock.

On October 13, before the plaintiff in the action above described had transferred his account to the other brokerage firm, the defendants wrote the plaintiff a letter which, stating dates when they said they purchased certain shares of the mill stock and the names of brokers from whom they purchased, and referring to the price at which they sold a part of the stock to the plaintiff and to the fact that the low prices for some of it were due to their accumulation of stock for their own account at lower prices and that they gave him the benefit of that fact, also stated: On September 11, "you gave us an order to purchase for your account these various stocks and sales to you were confirmed." The judge left to the jury the question, whether such letter was notice to the plaintiff that they had sold him their own stock. *Held*, that such ruling was right.

In the circumstances, it was proper for the judge to refuse to rule that the transfer from the defendants to the other firm of brokers of the account with all securities then held for the plaintiff's benefit was a ratification of the transactions above described.

It further appeared at the trial above described that the order for purchase of the mill stock was for not more than five hundred shares and was placed with the defendants on September 11. The defend-

ants in filling this order sent the plaintiff five confirmation slips; two were dated September 11, and one of them had two items for ten shares and one hundred thirty shares respectively, and the other was for fifty shares; one dated September 13 was for thirty-five shares, one dated September 14 was for seventy-five shares, and one dated September 15 was for forty shares. The plaintiff learned of the defendants' breach of fiduciary duty in selling the plaintiff their own stock in the following June after some of the stock had been sold by him through the other broker. *Held*, that the several purchases could be found to be separate transactions, and that it was proper for the judge to refuse to rule that the sale of a part of this stock before the facts as to the breach of fiduciary duty became known to him deprived the plaintiff of the right of rescission on that ground as to the shares he continued to own.

In the circumstances above described, material facts bearing on the issue being in dispute, the question, whether the plaintiff acted within a reasonable time in disaffirming the sale because of breach of fiduciary duty, was for the jury.

Since, upon the evidence before them, the jury might well have found that the defendants were not liable to the plaintiff for their breach of duty in selling him their own stock, and have awarded damages solely for the false representation, the proper rule for the determination of damages upon such a finding should have been stated to the jury, namely, that damages were limited to the difference between the value of what the plaintiff received and what its value would have been if it had been as represented; for error of the judge in stating a different rule, exceptions of the plaintiff were sustained and a new trial was ordered.

Since, on the record, the exact time when the plaintiff acquired an interest in any particular shares of the mill stock did not clearly appear and no question properly was raised on the record to require the trial judge to decide whether the plaintiff, when he acquired an interest in any part of the stock, had such knowledge of the falsity of the representation as to prevent his recovery on that ground with reference to any of it, nor to decide whether the evidence was such that the jury would have been able to apply the proper rule of damages for false representations if it had been stated to them, the new trial ordered was not confined to the question of damages.

CONTRACT OR TORT against a firm of stockbrokers doing business under the firm name and style of Whitney & Elwell. Writ dated July 1, 1927.

The declaration is described in the opinion. The action was tried in the Superior Court before *Walsh*, J. Material evidence is described in the opinion. There was a verdict for the defendants on the first count of the declaration; and for the plaintiff on the second count in the sum of $6,300. The defendants alleged exceptions.

*M. Jenckes,* for the defendants.

*C. F. Albert,* for the plaintiff.

SANDERSON, J.    This is an action of contract or tort in two counts, the first alleging breach of fiduciary duty by the defendants as brokers in buying shares of stock which the plaintiff had instructed them to sell, and in consequence whereof he rescinded the purchase by the defendants; the second, so far as now material, alleging, in substance, that the plaintiff was induced to instruct the defendants to buy for him stock of the Nonquitt Spinning Company by misrepresentation as to the dividend it was paying, and that thereupon the defendants, without the plaintiff's consent and in violation of their duty as brokers and of their instructions, sold him three hundred forty shares of stock in that corporation which they themselves owned; that the plaintiff sold a part of these securities before he knew of this violation of duty, and when he learned the facts he rescinded the transfer of the securities he still owned, tendering them to the defendants and demanding the purchase price with interest from the date of sale; and at the same time he demanded the difference between the purchase price of the securities which had been sold by him before he realized that the defendants had violated his instructions, and the sale price with interest.    The jury returned a verdict for the defendants on the first count and for the plaintiff on the second.    The case is brought to this court by the defendants' exceptions.

The testimony tended to prove that on April 23, 1926, the plaintiff asked the defendants' agent if he could buy stocks for him on margin, and, after some conversation about the nature of a margin transaction and the merits of certain stock, opened a margin account with the defendants and placed an order to buy certain specified stock for his account.    There was conflicting evidence whether the plaintiff was told that listed securities were bought on the floor of the stock exchange by the defendants as agents for their customers and that unlisted securities were sold directly by them to their customers.

The jury could have found that the plaintiff was not told and did not know that unlisted securities were so sold. In accordance with their custom the defendants after each purchase mailed to the plaintiff papers referred to as " confirmation slips." Those relating to the purchase of listed securities, after the names, addresses and date, began with these words: " Upon your order, we have this day bought for your account and risk "; then followed a statement of the details of the transaction. On the slips for the purchase of unlisted securities, after the name and address of the broker and date, appeared the words, " Sold to," followed by the plaintiff's name, and under this the name and amount of the stock and the price. Upon receiving the first slip showing a sale to the plaintiff of unlisted stock, he noticed that no commission had been charged and asked the agent of the defendants if there was not some mistake because of this, and was told: " That is all right. Never mind. That is all right now. We didn't charge any commission." The defendants bought and sold securities for the plaintiff during the summer of 1926.

The jury could have found that on September 11 of that year the defendants' agent represented to the plaintiff that the stock of the Nonquitt Spinning Company was paying six per cent dividends and selling at $45 per share, and that, believing those statements to be true and in reliance upon them, he ordered the purchase of that stock on his account to an amount not in excess of five hundred shares. He testified that in placing the order he said " we could stand five hundred shares " of the stock, and that the defendants' agent said to him in substance that his account could stand up to that amount. The defendants in filling this order sent the plaintiff five confirmation slips; two were dated September 11, and one of them had two items for ten shares and one hundred thirty shares respectively, and the other was for fifty shares; one dated September 13 was for thirty-five shares, one dated September 14 for seventy-five shares, and one dated September 15 for forty shares. The Nonquitt Spinning

Company stock was unlisted and the slips were in the form described above for such securities. The plaintiff testified that on September 13, 1926, he learned from a Boston paper that this company had paid no dividends since 1924, and that this information was confirmed by what he read in other Boston papers about two weeks later. In his subsequent dealings with the defendants the plaintiff did not refer to the representation concerning dividends on the stock, but shortly after its purchase he made complaint to the defendants that he had paid too much for it, and, becoming dissatisfied, he transferred his account to another brokerage house on October 27, 1926. In November, 1926, he sold two hundred twenty shares of the Nonquitt Spinning stock through the new brokers at a price below what he had paid for it.

The plaintiff testified that it was about June, 1927, when he first learned that the defendants had sold him their own securities and that the only difference he noticed between the confirmation slips in case of purchases of listed securities and those of unlisted securities was the absence of commission on the latter. Testimony was offered as to the value of the stock in September and October, 1926, and on June 29, 1927. On the latter date the plaintiff tendered return of the one hundred twenty shares remaining unsold and demanded from the defendants a sum equal to the difference between the amount received for the two hundred twenty shares he had sold and the amount paid for it when bought, with interest.

The second count was in form to permit recovery on the ground of rescission, and it also contained allegations sufficiently specific to permit recovery for the false representation alleged. *Manning* v. *Albee,* 11 Allen, 520. *Gurney* v. *Tenney,* 197 Mass. 457, 465. *Stewart* v. *Joyce,* 201 Mass. 301, 310. *Ginn* v. *Almy,* 212 Mass. 486, 493, 504. As the case was submitted to the jury, they may have found for the plaintiff on this count either for the false representation or upon the ground of repudiation of the contract for breach of a fiduciary duty. These causes of action should have been set out in separate counts.

*Patch* v. *Cashman,* 244 Mass. 378, 379. The defendants having answered and gone to trial on the merits cannot now object because distinct causes of action are set forth in one count. *Paine* v. *Kelley,* 197 Mass. 22, 27.

In June, 1927, when the plaintiff tendered to the defendants the shares of stock he then held and demanded payment of the sum which represented his loss on the rest of the stock, it was too late for him to rescind on the ground of the fraudulent representation to which he testified. After he knew that the representation was untrue, he retained the whole stock for a substantial period of time without making an offer to return it and then sold part of it. In the case of the sale of property, if the buyer intends to rely upon rescission he must return or offer to return the property within a reasonable time after he has gained knowledge of the facts which give him a right to rescind. *Bassett* v. *Brown,* 105 Mass. 551, 557. *Plympton* v. *Dunn,* 148 Mass. 523, 527. *McKinley* v. *Warren,* 218 Mass. 310, 313. *Skillings* v. *Collins,* 224 Mass. 275, 277.

The right to bring an action for damages caused by the false representation would not be affected by the loss of the right to rescind on that ground, nor would such a right of action be barred by reason of the fact that the plaintiff has attempted to repudiate or rescind and has in the same action attempted to recover on that ground. *Furber* v. *Dane,* 204 Mass. 412, 415. *Corbett* v. *Boston & Maine Railroad,* 219 Mass. 351, 357. *Burke* v. *Willard,* 249 Mass. 313, 317.

In *Hall* v. *Paine,* 224 Mass. 62, and 230 Mass. 62, it was decided that one who is dealt with as a broker is not at liberty, as a principal, either to buy from or to sell directly to the customer stocks which he is directed, as a broker, to sell or buy for him; and that, on discovering that the broker has so dealt, the customer may repudiate the transaction and recover what he has paid with interest. *Wisbey* v. *Alan Shepard & Co. Inc.* 268 Mass. 21, 22. It was not disputed that all the shares of Nonquitt Spinning Company stock purchased by the plaintiff were owned

by the defendants and sold to him at an advance over what they paid for them. There was nothing in the form of the order for the purchase of Nonquitt Spinning Company stock to indicate that the transaction was not to be executed by the defendants as brokers in accordance with the arrangement made when they undertook to buy stock for the plaintiff on margin. He had a right to assume that in all the transactions concerning the buying and selling of stock the defendants would continue to act as brokers unless notified in some way that the relationship had changed. He testified that he was not so notified.

The defendants contend that as matter of law the plaintiff had notice that they were selling him their own stock and therefore could not rescind upon that ground. The judge was justified in not ruling that the confirmation slips were notice to him that the defendants were selling their own stock. A witness called by the defendants testified that the purpose of the slips was to let the customer know the next morning after a purchase what he had paid for his stock. They were not part of the original contract. *Leviten* v. *Bickley, Mandeville & Wimple, Inc.* 35 Fed. Rep. (2d) 825, 826. To maintain the contention that they bound the plaintiff with knowledge that he was buying the defendants' property, it must appear not only that he read or should have read them but also that if read they would give him notice of a direct sale. The absence from the slips of a charge for commission could not be ruled to be notice of a direct sale, especially in view of the answer received by the plaintiff when he directed the attention of the defendants' agent to this omission. It cannot be said as matter of law that the words "Sold to" on the slips concerning the stock in question, either when the slips are considered by themselves or in connection with other slips representing purchases by the defendants as brokers, bound the plaintiff with notice that the defendants were selling him their own stock. See *Metcalf* v. *Williams,* 144 Mass. 452, 454; *Greenburg* v. *Whitney,* 245 Mass. 303, 306. The words

are not necessarily inconsistent with the interpretation that the brokers were selling property of another customer as in *Hall* v. *Paine,* 224 Mass. 62, 74, 76. It was for the jury to say under all the circumstances whether the confirmation slips were notice to the plaintiff that he was buying directly from the defendants, or should have put him upon inquiry to ascertain if that was so. *Picard* v. *Beers,* 195 Mass. 419, 428.

The judge was justified in leaving to the jury the question, whether the letter of October 13, 1926, from the defendants to the plaintiff was notice that they had sold their own stock to him. It contained among other statements the words: "On Saturday, September 11th, you gave us an order to purchase for your account these various stocks and sales to you were confirmed." It also gave dates when the defendants said they purchased certain shares of this stock and the names of brokers from whom purchased, and referred to the price at which the defendants sold a part of the stock to the plaintiff and to the fact that the low prices for some of it were due to their accumulation of stock for their own account at lower prices and that they gave him the benefit of that fact.

The transfer from the defendants to another firm of brokers of the account with all securities then held for the plaintiff's benefit could not be ruled to be a ratification of the transactions now under consideration.

Under the order given the several sales of the Nonquitt Spinning Company stock could be found to be separate transactions and the judge could not have ruled that the sale of a part of this stock before the facts as to the breach of fiduciary duty by the defendants became known to him deprived the plaintiff of the right of rescission on that ground as to the shares he continued to own. *Edward Thompson Co.* v. *Washburn,* 191 Mass. 6, 9. *Barlow Manuf. Co.* v. *Stone,* 200 Mass. 158, 160. *Barrows* v. *Fuller,* 253 Mass. 79, 83. The case in his respect is distinguishable from cases like *Morse* v. *Brackett,* 98 Mass. 205, 207, where specific property has been sold under an entire contract. "An election made in ignorance of material facts is, of course, not

binding, when no other person's rights have been affected thereby." *Watson* v. *Watson*, 128 Mass. 152, 155.

Material facts bearing on the issue being in dispute, the question whether the plaintiff acted within a reasonable time in disaffirming the sale because of breach of fiduciary duty was for the jury. *Bassett* v. *Brown*, 105 Mass. 551, 557. If the plaintiff's first knowledge of the facts concerning the sales by the defendants of their own property to him was gained in June, 1927, the attempted avoidance on June 29, 1927, could not be held as matter of law not to have been within a reasonable time. *Wisbey* v. *Alan Shepard & Co. Inc.* 268 Mass. 21, 24.

The trial judge was right in refusing to direct a verdict for the defendants on the second count.

In the charge the judge ruled in substance that in case the jury found that the plaintiff acted within a reasonable time to avoid and repudiate the sale, he is entitled to recover the difference between the price paid for the one hundred twenty shares of the Nonquitt Spinning Company stock tendered and the market value of the stock at the time of tender. Referring to the remaining two hundred twenty shares his charge as to damages was in the following language: " With respect to the number of shares which were sold and which were not tendered back and which it is claimed he was induced to purchase through misrepresentation, it is for you to say with respect to them how much . . . as a result of this misrepresentation in paying a certain sum for these shares he suffered when they were sold by the plaintiff without knowledge that when he purchased them from the defendants they were selling him their own stock . . . . He would be entitled, if there was such misrepresentation, to recover all the damages which arose or were occasioned as the natural consequence of such misrepresentation, if such there was." To the rulings quoted the defendants saved exceptions, and no rulings excepting those stated were given to guide the jury in case they awarded damages, either because of the violation of duty by the de-

fendants in selling their own stock or because of false representation.

The plaintiff is not seeking to recover secret profits made by the defendants in selling their own stock to him, but is basing his right of action upon his own losses. The ruling relating to the assessment of damages in case the jury should decide that the plaintiff was within his rights in undertaking to rescind the sale of the stock he owned in June, 1927, was in most respects like that stated in *Hall* v. *Paine,* 224 Mass. 62, 77. The plaintiff having made no offer to return the remaining two hundred twenty shares lost all right to rescind as to them, *Stewart* v. *Joyce,* 201 Mass. 301, 311, *United Zinc Co.* v. *Harwood,* 216 Mass. 474, 477, see *Mayo* v. *Knowlton,* 134 N. Y. 250, 253, and as to them his measure of damages for the violation by the defendants of their duty as brokers was not the loss incurred by him when he sold them in November. That loss resulted from his own decision to sell when he did and could not be found to be the proximate result of the defendants' violation of duty in selling him their own stock. *Waddell* v. *Blockey,* 4 Q. B. D. 678. As to those shares if damages were assessed for this breach of duty they would be measured by the difference between what the plaintiff paid and what on the day of the purchase he could have sold the stock for in the market. *Waddell* v. *Blockey, supra. Whiting* v. *Price,* 172 Mass. 240. See *Parsons* v. *Martin,* 11 Gray, 111, 116; *Coffing* v. *Dodge,* 167 Mass. 231, 241. If unable to prove actual damage, he would be entitled to nominal damages for this breach of duty. The jury may well have found on the second count, as they did on a similar issue in the first, that the defendants were not liable to the plaintiff for their breach of duty in selling him their own stock, and awarded damages solely for the false representation.

The rulings given were erroneous in omitting to state that damages for false representations in a case of this kind must be limited to the difference between the value of what the plaintiff received and what its value would

have been if it had been as represented; and in laying down a rule which would probably result in the assessment of damages on this issue upon a wrong theory. *Morse* v. *Hutchins,* 102 Mass. 439, 440. *Thomson* v. *Pentecost,* 206 Mass. 505, 512. *McKinley* v. *Warren,* 218 Mass. 310, 314. *Vouros* v. *Pierce,* 226 Mass. 175, 178. The facts here disclosed do not warrant the application of a different rule of damages. See *Tuckwell* v. *Lambert,* 5 Cush. 23; *Fottler* v. *Moseley,* 185 Mass. 563. The errors in these rulings on damages as applied to the stock which had been sold if assessed for breach of fiduciary duty, and also as applied to the issue of fraudulent representation, were in our opinion prejudicial to the substantial rights of the defendants, and their exceptions thereto must be sustained. All stock was ordered by the plaintiff before he had notice that it was not paying a dividend. The jury could have found that it was all acquired by the defendants on or before September 13, 1926. It was not to be delivered but to be kept by them and carried on margin. The exact time when the plaintiff acquired an interest in any particular shares of this stock does not clearly appear. It would not necessarily depend on the dates of the confirmation slips. The agent of the defendants, with whom the plaintiff dealt, testified · that, when the plaintiff called him by telephone on September 14 and asked if the balance of the stock had been secured, he answered that it had not, stated that he had stopped buying, and suggested that the plaintiff sell the stock because it showed a profit. No question is properly raised on the record to require the judge to decide whether the plaintiff had such knowledge of the falsity of the representation when he acquired an interest in any part of the stock as to prevent his recovery on this ground with reference to any of it, nor to decide whether the evidence was such that the jury would have been able to apply the proper rule of damages for false representations if it had been stated to them.

Ordinarily if the plaintiff's right of recovery is established by a verdict and no reversible error appears except

in the matters that affect damages, the new trial would be confined to that issue, *Thomson* v. *Pentecost,* 206 Mass. 505, 513; but in the case at bar no such limitation of the issues in a new trial can be made as it is impossible to determine whether the verdict was based upon rescission or upon false representation. *Coffing* v. *Dodge, supra.*

Because of the fact that there must in any event be a new trial of the case on the issues presented in the second count, and it is not probable that the other questions argued will at that trial be presented in the same form, they have not been passed upon in this opinion.

*Exceptions sustained.*